**UNITED STATES of America,
Appellee,**

v.

**Joselito ABREU, a/k/a Jose A. Lora,
Defendant, Appellant.**

**No. 99–1403.**

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 2000.

Decided Jan. 31, 2000.

---

Thomas G. Briody for appellant.

Donald C. Lockhart, Assistant U.S. Attorney, with whom Margaret E. Curran, United States Attorney, and Zechariah Chafee, Assistant U.S. Attorney, were on brief, for appellee.

Before Torruella, Chief Judge, Coffin, Senior Circuit Judge, and Lynch, Circuit Judge.

LYNCH, Circuit Judge.

This case concerns the administration of justice for indigent defendants under the Criminal Justice Act, 18 U.S.C. § 3006A. More particularly, it concerns applications by indigent defendants for government funding of expert services "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). Because the district court violated the provision of this statute providing that such applications be heard ex parte, we vacate and remand.

Joselito Abreu pled guilty to possession with intent to distribute over 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Abreu is a citizen of the Dominican Republic and required the assistance of an interpreter throughout the legal proceedings. He has a history of small criminal offenses and, in this case, was caught with about $30,000 worth of cocaine and related paraphernalia in his apartment. After his arrest, the Justice Department notified the facility in which

he was being held that "Abreu had some suicidal and mental health concerns." During his initial screening at the facility, Abreu indicated that he had attempted suicide the night before.

In preparation for Abreu's change of plea hearing, his court-appointed counsel asked him whether he was taking a certain medication. Abreu said he was; however, the nurse at the detention facility said Abreu was not taking the medication and had not been doing so for several weeks. When asked about the medication at the plea hearing, Abreu contradicted the nurse and said that he had taken the medication "[a]bout four days ago" (although he maintained that this medication did not affect his ability to make a plea). When asked by the court whether he had been read the indictment, Abreu said he could not remember and that he sometimes had problems remembering things.

Concerned about these facts, about Abreu's difficulties in understanding certain things, and about inconsistent statements Abreu made to him (that counsel felt were protected by the attorney-client relationship), Abreu's counsel sought an evaluation by a licensed psychologist before sentencing. Because Abreu is indigent, counsel utilized the procedure set forth in 18 U.S.C. § 3006A and filed an ex parte application for the funding of expert services. The sum sought was $550. Counsel represented that while he believed there was a basis to seek a psychological evaluation, it was not clear whether such an evaluation would support a request for a downward departure for "diminished capacity" under U.S.S.G. § 5K2.13. If the evaluation did, counsel indicated that he might seek such a departure at sentencing. If it did not, he would not.

The district court first held an ex parte hearing to determine whether it should consider the application ex parte. It determined that it would not. At the court's direction, counsel for Abreu then refiled the application for funding with notice to the government and the government filed

an opposition. The district court held a hearing at which the government was present. Because the government was present, defense counsel declined to place on the record certain confidential matters that formed part of the basis for the application. The court denied the request for services. The defense, deprived of the expert examination it had requested, did not argue for a lesser sentence on the basis of diminished mental capacity. Abreu was eventually sentenced to 70 months imprisonment. He now appeals.

■ This court has appellate jurisdiction over § 3006A determinations that impact a defendant's trial or sentence. *See United States v. Manning*, 79 F.3d 212, 218–19 (1st Cir.1996) (reviewing a district court's denial of a request for expert services for trial under § 3006A); *United States v. Mateos–Sanchez*, 864 F.2d 232, 239–40 (1st Cir.1988) (reviewing a district court's decision to deny travel expenses requested under § 3006A for the purpose of interviewing potential witnesses); *see also United States v. Bloomer*, 150 F.3d 146, 149 (2d Cir.1998) (noting that appellate review is available for § 3006A determinations "that impact a defendant's trial, sentence, or collateral challenge to a conviction or sentence").

Abreu says that the district court violated the plain terms of the statute—which requires that applications for such funding by indigent defendants be handled ex parte—and requests that the matter be remanded for reconsideration ex parte; alternatively, Abreu says that the court should review and reverse the district court's ultimate determination that his request for the $550 expenditure was not necessary.

The prosecution does not concede that the application was required to be heard ex parte by the statute, but neither does it defend the trial court's decision to make the application the subject of an adversary proceeding. At oral argument, the government said it had initially considered

requesting a limited remand so that the court could hear ex parte the additional information that Abreu's counsel viewed as confidential and reconsider the matter. The government decided to contest the matter, however, since, it argues, a remand is not necessary because there was, in the end, no prejudice to the defendant. There was no prejudice, the government says, because it was clear from the record and from the judge's own observations that the defendant would never have been able to meet the high threshold necessary for a "diminished capacity" adjustment. *See* U.S.S.G. § 5K2.13; *see also United States v. Nunez–Rodriguez,* 92 F.3d 14, 24 (1st Cir.1996).

■ The government's first instincts were correct. We think it premature to reach the question of prejudice or the merits of the decision to deny funding. As to the government's argument that we should overlook any problem, it is true, as the government says, that review of the merits of such a § 3006A decision is deferential. *See Manning,* 79 F.3d at 218 ("A district court's denial of a request for such [expert] services [under § 3006A] is reviewed only for an abuse of discretion."). But because the trial court did not follow the required procedures, material information is not in the record and reaching the merits would be inappropriate.

■ The district court committed error in refusing to entertain the application ex parte under 18 U.S.C. § 3006A(e)(1). The statutory provision says:

(e) Services other than counsel.—

    (1) Upon request.—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application.

Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1). Although the statute expressly provides that the proceeding be ex parte, the district court found the statute's language to be "very ambiguous." The judge did not explain why he viewed this language as ambiguous. At the adversary hearing, the court simply said that "it just didn't seem to make sense" to hear the application ex parte where "the Defendant had already pled guilty, and what we were dealing with was a sentencing issue."

The distinction the district court drew, for § 3006A purposes, between sentencing and trial strikes us as unsound. To our knowledge, no reported decision has held that the ex parte provisions of § 3006A do not apply to the sentencing stage, and the government does not argue that § 3006A does not apply to sentencing. Further, nothing in the statute limits its applicability to pre-sentencing proceedings. Rather, the statutory structure indicates that it does apply. Subsection (e) refers to services "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1).[1] Under the statute, appointed counsel represent indigent clients through sentencing and beyond. In fact, subsection (c) of the statute, provides that:

A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate or the court through appeal, including ancillary matters appropriate to the proceedings. . . .

1. In 1986, subsection (e) was amended by substituting "adequate representation" for "an adequate defense." *See* Criminal Justice Act Revision of 1986, Pub.L. 99–651, § 102(a)(4)(A), 100 Stat. 3642, 3644. Although the legislative history does not provide

an explanation for this change, *see* H.R.Rep. No. 99–417 (1985), *reprinted in* 1986 U.S.C.C.A.N. 6165, 6178, one could infer that the change was meant to broaden the reach of subsection (e)'s provisions.

18 U.S.C. § 3006A(c). The legislative history associated with this provision reaffirms that "adequate representation" requires support throughout all phases of the proceedings: "This provision [subsection (c)] is necessary to insure that the rights of the person are fully protected. Many times remedies technically outside the scope of the trial proper may be necessary...." H.R. Rep. 91–1546 (1970), reprinted in 1970 U.S.C.C.A.N. 3982, 3989; see also H.R. Rep. 88–864 (1963), reprinted in 1964 U.S.C.C.A.N. 2990, 2992 ("[A] defendant is entitled to representation by counsel at every stage of the proceedings, from his initial appearance through appeal."). Thus, reading the statute as a whole, it appears that Congress intended the provisions of subsection (e) to apply to sentencing. While other circuits have assumed this to be so, see e.g., Bloomer, 150 F.3d at 148 (noting that "applications for appointment of an expert are ex parte and nonadversarial" in a case where expert fees for testimony at re-sentencing were sought); United States v. Roman, 121 F.3d 136, 143 (3d Cir.1997) (reviewing a § 3006A application for a psychiatric evaluation to aid in requesting a downward departure at sentencing); United States v. Harden, 70 F.3d 1263 (unpublished table decision), in 1995 WL 703543, at *1 (4th Cir.1995) (same); United States v. Smith, 987 F.2d 888, 891 (2d Cir.1993) (same), it appears that this may be the first circuit opinion to so hold. It was error for the district court to conclude that the "ex parte proceeding" language of subsection (e) did not apply to sentencing.

■ Nor do we see any ambiguity at all in subsection (e)'s use of the term "ex parte." The statute says plainly that proceedings and applications should be ex parte.[2] The text is not ambiguous in any sense and the meaning of "ex parte proceeding" is well established. See, e.g., United States v. Meriwether, 486 F.2d 498, 506 (5th Cir.1973). Black's Law Dictio-

nary defines it as a "proceeding in which not all parties are present or given the opportunity to be heard." Black's Law Dictionary 1221 (7th ed.1999). It further defines "ex parte" as "[d]one or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested." Id. at 597.

This lack of ambiguity is underscored by provisions in the Guide to Judiciary Policies and Procedures, promulgated pursuant to § 3006A(h), which says that the Judicial Conference of the United States "may, from time to time, issue rules and regulations governing the operation of plans formulated under this section." 18 U.S.C. § 3006A(h). The Guide provides:

> Ex parte applications for services other than counsel under subsection (e) shall be heard in camera, and shall not be revealed without the consent of the defendant. The application shall be placed under seal until the final disposition of the case in the trial court, subject to further order of the court. Maintaining the secrecy of the application prevents the possibility that an open hearing may cause a defendant to reveal his or her defense.

7 Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures, ch. III, pt. A, § 3.03.

This is consistent with the legislative history, which states that an ex parte proceeding is provided for in subsection (e) so as to "prevent[] the possibility that an open hearing may cause a defendant to reveal his defense." H.R.Rep. No. 88–864 (1963), reprinted in 1964 U.S.C.C.A.N. 2990, 2990; see United States v. Gonzales, 150 F.3d 1246, 1258 n. 16 (10th Cir.1998).

The circuit courts have recognized the importance of such applications being ex parte in trial proceedings. In United States v. Sutton, 464 F.2d 552 (5th Cir. 1972), the court reversed a conviction

---

**2.** It may be that some special circumstance might warrant departure from the language, a matter we do not decide because this case does not raise any such circumstance.

where the trial court heard a request for an investigator under § 3006A(e) in the presence of the prosecution, saying "[t]he ex parte requirement could hardly be expressed in clearer language." *Id.* at 553. And in *Marshall v. United States,* 423 F.2d 1315 (10th Cir.1970), the court reversed the judgment where a § 3006A(e) application was heard in an adversarial proceeding, noting that "[t]he manifest purpose of requiring that the inquiry be ex parte is to insure that the defendant will not have to make a premature disclosure of his case." *Id.* at 1318; *see also Lawson v. Dixon,* 3 F.3d 743, 751 (4th Cir.1993) (stating that § 3006A "has been interpreted as virtually guaranteeing that decisions on expert-appointment motions will be made, as that statute requires, 'after appropriate inquiry in an ex parte proceeding'"); *United States v. Chavis,* 476 F.2d 1137, 1144 (D.C.Cir.1973) ("We agree that the statutory scheme means that not to provide an opportunity for an ex parte hearing on the matter does constitute error.").

■ While evidentiary rules at sentencing may be relaxed, *see, e.g., United States v. Cetina-Gomez,* 951 F.2d 432, 435 (1st Cir.1991), sentencing is still an adversarial proceeding, *see Burns v. United States,* 501 U.S. 129, 135, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (noting that the Federal Rules of Criminal Procedure "contemplate[ ] full adversary testing of the issues relevant to a Guidelines sentence"); *United States v. Pellerito,* 878 F.2d 1535, 1544 (1st Cir.1989). Defendants do not give up their Fifth Amendment rights at sentencing. *See United States v. Montilla-Rivera,* 115 F.3d 1060, 1065 (1st Cir.1997). Given the extent to which sentencing determines a defendant's liberty, it is just as crucial that the defendant have a fair opportunity to marshal a defense at the sentencing phase as at any other phase of the criminal proceedings. In fact, the Supreme Court, in a capital case, has said that due process requires that, where "the defendant's mental condition [is] relevant to his criminal culpability and to the punishment he might suffer," the government provide to indigent defendants expert psychiatric testimony at "the sentencing phase." *Ake v. Oklahoma,* 470 U.S. 68, 80, 83–84, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

There is another principle at stake: fair treatment of indigents. Defendants who are able to fund their own defenses need not reveal to the government the grounds for seeking a psychiatrist who might potentially testify at sentencing. To require indigent defendants to do so would penalize them for their poverty. The words of Judge Aldrich in an opinion of this court more than thirty years ago still hold true:

> [W]e would regard the purpose of the ... rule as apparent on its face to be in recognition of the principle that defendants are not to be avoidably discriminated against because of their indigency.

*Holden v. United States,* 393 F.2d 276, 278 (1st Cir.1968) (construing the requirement in Rule 17(b) that subpoenas issue on an ex parte application of a defendant).

■ The district court was in error in not handling the entire application on an ex parte basis.[3] The scope of the remand is narrow. The district court must hear ex parte any matters that have not already been presented by counsel and then reconsider whether it should grant the application. The only new matters that counsel may present are those he refrained from presenting before on grounds of privilege or confidentiality. If the court decides to grant the application, then counsel for defendant must advise the district court, after the psychological examination, whether Abreu seeks re-sentencing. If the court denies the application, then a sentence of

---

**3.** This decision is concerned only with the failure of the court to handle this matter ex parte. We do not reach the issue of when a trial court is required to hold a hearing on an ex parte application (as opposed to ruling on the papers), nor do we reach any issue as to the merits of the decision to deny the application in this particular case.

the same term as the original sentence will be reinstated. If Abreu wishes to take an appeal from the denial of the application at that point, he must file a new notice of appeal. In the interim, the sentence is *vacated* and the case *remanded* for further proceedings in light of this opinion.

So ordered.