# United States Court of Appeals
## For the First Circuit

No. 05-1249

UNITED STATES,

Appellee,

v.

FRANK MASTERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, Chief District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Robert C. Andrews for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula
D. Silsby, United States Attorney, was on brief, for appellee.

January 20, 2006

**STAHL**, <u>**Senior Circuit Judge**</u>.  Frank Mastera pled guilty in 2004 to two counts of unlawful firearm possession.  Upon the recommendation of the Pre-Sentence Investigation Report (PSI), the sentencing judge determined that Mastera fell within the ambit of the Armed Career Criminal Act (ACCA), which provides mandatory minimum penalties for defendants with a history of violent felony convictions.  The judge determined that Mastera had committed the requisite three prior felonies, and accordingly sentenced him to the ACCA's minimum penalty of fifteen years in prison.  In addition, prior to sentencing, Mastera submitted a request for funds, in the amount of $900, for an expert psychological evaluation to determine whether he had a diminished capacity that would allow for a reduced sentence.  The district court denied this request.

Mastera now appeals both the district court's decision to sentence him under the ACCA and that court's denial of funds for a psychological evaluation.  We find no error, and so affirm.

## I. Background

Mastera pled guilty to one count of possessing a firearm and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1) (2000), and one count of possessing a stolen firearm, in violation of 18 U.S.C. § 922(j).  The Armed Career Criminal Act, which carries a mandatory minimum sentence of fifteen years' imprisonment, applies to felons convicted of firearm possession

-2-

under 18 U.S.C. § 922(g)(1) and who have at least three previous convictions for violent felonies or serious drug offenses. <u>See</u> 18 U.S.C. § 924(e). The predicate convictions must be for crimes "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

The district court found that Mastera had four qualifying convictions: one for stalking, one for assault with a dangerous weapon, and two for separate incidents of breaking and entering. Mastera concedes that the assault conviction properly counts as an ACCA predicate. But he contends that there was insufficient evidence for the district court to determine that either of the breaking and entering convictions was a conviction for a violent felony as defined in 18 U.S.C. § 924(e)(2)(B). He also argues that the stalking conviction and one of the breaking and entering convictions derive from conduct committed on the same occasion, and thus can count as only one predicate conviction rather than two. In sum, Mastera claims, he had only two predicate convictions, not the requisite three, and thus the district court erred in sentencing him under the ACCA.

Mastera also requested the district court to grant funds for a psychological evaluation to determine if he had a diminished capacity that might qualify him for a reduced sentence, because as a person of limited means, Mastera could not afford to pay an expert himself. His submission to the court alleged that he was an

alcoholic who suffered from insomnia and racing thoughts and that as a child he had endured abuse. He admitted that he was not on any medication except to treat acid reflux disease. The court denied Mastera's request, sentencing him to a fifteen-year term, the mandatory minimum under the ACCA.

## II. Discussion

Mastera appeals both the district court's determination that he qualified as an Armed Career Criminal and the court's denial of funds for a psychological evaluation. We address the two issues in turn.[1]

## A. Adjudication under the Armed Career Criminal Act

Mastera argues that the district court improperly sentenced him under the ACCA because there was insufficient evidence to conclude he had the required three predicate violent felony convictions. The district court found that Mastera had four such convictions. Here, Mastera attacks two of those determinations. Whether a defendant qualifies as an Armed Career

---

[1]Mastera also argues that the ACCA is unconstitutional because it allows a defendant to receive a mandatory minimum sentence based on facts (i.e. the facts of prior convictions) that are found by a judge rather than by a jury beyond a reasonable doubt. We have already rejected this argument in United States v. Ivery, 427 F.3d 69 (1st Cir. 2005), in which we held that Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998), which upheld a federal law allowing judges to impose an enhanced sentence based on prior convictions that had not been alleged in the indictment, "remains binding law that we must apply until overruled by a majority of the Supreme Court." Ivery, 427 F.3d at 75.

Criminal is a question of law that we review de novo. United States v. Moore, 286 F.3d 47, 49 (1st Cir. 2002).

1. Overlap between Paragraphs 34 and 35[2]

Mastera's first claim is that two of his prior convictions, those laid out in Paragraphs 34 and 35 of the PSI, were erroneously counted as two separate ACCA predicates instead of as just one. Paragraph 34 describes a conviction for breaking and entering in the daytime, and Paragraph 35 describes a conviction for stalking; both convictions were in 1998.[3] The crime of stalking[4] undoubtedly satisfies the ACCA's definition of a violent felony because it "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(1), and Mastera does not argue otherwise.[5] He

_____

[2]For ease, we will sometimes refer to a contested conviction by the number of the paragraph in which it was described in the PSI.

[3]According to the PSI, the breaking and entering took place on September 7, 1997, while the stalking charge was dated September 8 of the same year.

[4]In Massachusetts, a person commits the crime of stalking if he or she "(1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury." Mass. Gen. Laws Ann. ch. 265, § 43 (2000).

[5]Mastera's "overlap" claim assumes arguendo that the breaking and entering conviction in Paragraph 34 is also a valid ACCA predicate, and the following discussion makes the same assumption. He makes an independent challenge to the validity of Paragraph 34;

-5-

contends, however, that it was improper to count his Paragraph 34 and 35 convictions as two separate ACCA predicates, because the two convictions do not arise from acts "committed on occasions different from" one another as required by 18 U.S.C. § 924(e)(1). The breaking and entering, the argument goes, was part of the same course of conduct that made up the stalking charge, and since Massachusetts law defines the crime of stalking to require multiple acts, the "occasion" underlying the stalking encompasses, and thus is not "different from," the "occasion" underlying the breaking and entering. Whether two crimes occurred on separate occasions within the meaning of the ACCA "requires a case-by-case examination of the totality of the circumstances." United States v. Stearns, 387 F.3d 104, 108 (1st Cir. 2004).

Mastera correctly asserts that, under Massachusetts law, stalking requires a "pattern of conduct or series of acts." See Mass. Gen. Laws Ann. ch. 265, § 43 (2000); see also Commonwealth v. Alphas, 712 N.E.2d 575, 581 (Mass. 1999) (stalking by following requires more than two incidents of following); Commonwealth v. Kwiatkowski, 637 N.E.2d 854, 857-58 (Mass. 1994) (stalking by harassment requires more than two incidents of harassment).

The record does not indicate that the September 7 breaking and entering was one of the "incidents" composing the stalking charge of which Mastera was convicted in 1998. Because

---

we address that challenge infra, Section II.A.2.

there is no evidence that the acts underlying Paragraph 34 also underlie Paragraph 35, we need not decide what outcome that situation would require. Mastera has offered evidence only that the two crimes took place on consecutive days and had the same victim. Neither of these facts necessarily prevents a finding that the crimes occurred on separate occasions, see Stearns, 387 F.3d at 108-09, and in fact the record suggests that the breaking and entering had an "endpoint," after which any subsequent crimes would be considered separate. See id. The district court did not err in concluding that the breaking and entering offense and the stalking offense occurred on two separate occasions and that each could be counted as a separate ACCA predicate conviction.

2. Breaking and Entering in the Daytime (Paragraph 34)

Mastera next raises a challenge to the validity of Paragraph 34 as an ACCA predicate conviction. He admits that he was convicted and sentenced in 1998 on one count of breaking and entering in the daytime with intent to commit a misdemeanor. He argues, however, that under the Supreme Court's recent decision in Shepard v. United States, 125 S. Ct. 1254 (2005), there was insufficient evidence to allow the district court to conclude that this breaking and entering qualified as a "violent felony" under the ACCA.[6]

---

[6]Mastera was sentenced on February 15, 2005. The Supreme Court decided Shepard three weeks later, on March 7, 2005. The present appeal is on direct review, and "a new rule for the conduct

-7-

a. Legal Background

The ACCA includes "burglary" in its enumeration of qualifying violent felonies. 18 U.S.C. § 924(e)(2)(B)(i). However, the crime of "burglary" does not have the same elements in every jurisdiction. To clear up potential confusion and ensure consistent application of the ACCA across state lines, the Supreme Court has read the ACCA's definition of burglary "to refer to what we called 'generic burglary,' an 'unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.'" Shepard, 125 S. Ct. at 1257 (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)). This "generic" definition, which is limited to burglary of a building, is narrower than the crime as defined by some states, which "define burglary more broadly, as by extending it to entries into boats and cars." Shepard, 125 S. Ct. at 1257. Massachusetts is one of the handful of states with a broader definition of burglary.[7]

_____

of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328 (1987); cf. United States v. Booker, 125 S. Ct. 738, 769 (2005) (citing Griffith in support of applying Sixth Amendment holding and interpretation of Sentencing Act "to all cases on direct review.").

[7]Massachusetts law defines the crime of which Mastera was convicted in 1998 as the act committed by someone who "breaks and enters a building, ship, vessel or vehicle with intent to commit a misdemeanor." Mass. Gen. Laws Ann. ch. 266, § 16A (2000).

Because of this inconsistency, in non-generic states like Massachusetts, a sentencing judge cannot necessarily tell, simply from the fact that a defendant has been convicted of "burglary," whether that conviction was for breaking and entering into a building (in which case it would qualify as an ACCA predicate) or whether the conviction was for breaking and entering into a ship or motor vehicle (in which case it would not qualify as an ACCA predicate). Thus, before counting a Massachusetts burglary conviction as an ACCA predicate, a sentencing court must somehow determine that the burglary did, in fact, involve a building. This is because "any sentence under the ACCA [must] rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts equating to generic burglary." Id. at 1262 (plurality opinion) (quoting Taylor, 495 U.S. at 601).

Moreover, in Taylor and then in Shepard, the Supreme Court restricted the types of evidence a sentencing court may consider when deciding whether a state burglary conviction was for an act of "generic" burglary. In the context of a burglary conviction resulting from a guilty plea, "a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard, 125 S. Ct. at 1257. A "comparable judicial record" is

also acceptable.  Id. at 1263.  Documents such as complaint applications or police reports, in contrast, may not be considered by the sentencing court.  Id. at 1257.

b. Validity of Paragraph 34 as ACCA Predicate

On appeal, Mastera argues that the district court lacked sufficient evidence of the type permitted by Shepard to allow the conclusion that the Paragraph 34 conviction was for a generic burglary.  He acknowledges, however, that he forfeited this objection by failing to raise it before the sentencing court. Thus, we review only for plain error.  See United States v. Eirby, 262 F.3d 31, 36 (1st Cir. 2001).  To prevail under this standard, Mastera must make a four-part showing: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Luciano, 414 F.3d 174, 177 (1st Cir. 2005) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Mastera's argument fails on plain error review, at least under the second prong of the test, which requires that the error be "clear or obvious at the time of appellate consideration." United States v. Bradstreet, 135 F.3d 46, 50 (1st Cir. 1998) (internal quotation marks omitted) (citing United States v. Olano, 507 U.S. 725, 734 (1993); Johnson v. United States, 520 U.S. 461, 467-68 (1997)).  Mastera's counsel, in a sentencing memorandum to

the district court, more or less conceded that the conviction in Paragraph 34 was for breaking into a home (not a boat or a vehicle), stating that "the breaking and entering that occurred September 7, 1997 [the Paragraph 34 offense] appears to be a breaking and entering into his own home."  It may be debatable whether the defendant's admission, which was not made during the plea colloquy for the original conviction, falls within the evidence permitted by Taylor and Shepard.  But it was not a "clear" or "obvious" transgression of the Shepard rule for the sentencing court to consider the admission (which was sufficient to justify a conclusion by the court that the conviction was for generic burglary).  Given this uncertainty, we cannot say that the district court's finding of an ACCA predicate in the Paragraph 34 conviction was plainly erroneous.  Cf. United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002) ("unsettled state of the law" precludes finding of plain error).

Because Mastera has not shown that any clear or obvious error occurred, we need not address the third and fourth prongs of the plain error test.  The convictions in Paragraphs 34 and 35, together with the assault conviction that Mastera has conceded is a valid ACCA predicate, create the three convictions necessary to sustain adjudication as an Armed Career Criminal.

3. Breaking and Entering at Night (Paragraph 24)

The last of the four predicate convictions found by the district court in support of sentencing under the ACCA was a 1991 Massachusetts state conviction for breaking and entering at night with intent to commit a felony.[8]  Mastera argues that under Shepard, there was insufficient evidence to allow the district court to conclude that this breaking and entering qualified as a "violent felony" under the ACCA.  Although this argument was undoubtedly preserved for appeal, we need not reach it, because we have already determined that the district court properly found that Mastera had three predicate convictions -- the number necessary to qualify him for sentencing under the ACCA.  Whether the court had adequate Shepard-approved evidence to find that Paragraph 24 was an ACCA predicate therefore does not bear on the validity of Mastera's sentence.

**B. Denial of Funds for Psychological Evaluation**

Finally, we turn to Mastera's claim that the district court erred in denying his request for $900 to obtain a pre-sentencing psychological evaluation.  We review the denial of such a request for abuse of discretion.  United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996).

---

[8]Like breaking and entering in the daytime, the crime of breaking and entering at night encompasses burglary of "a building, ship, vessel or vehicle."  See Mass. Gen. Laws Ann. ch. 266, § 16 (2000).

Mastera contends that a psychological evaluation was necessary for him to prepare an adequate defense, since he is an alcoholic, suffered from sleep difficulties and racing thoughts, allegedly had mental health problems while incarcerated in the past, and had endured childhood abuse. He believes these facts might signify that he has a diminished capacity that would entitle him to a lower sentence.[9] "[D]ue process requires that, where 'the defendant's mental condition [is] relevant to his criminal culpability and to the punishment he might suffer,' the government provide to indigent defendants expert psychiatric testimony at 'the sentencing phase.'" United States v. Abreu, 202 F.3d 386, 391 (1st Cir. 2000) (quoting Ake v. Oklahoma, 470 U.S. 68, 80, 83-84 (1985)). Nevertheless, "a trial judge is not required to grant every motion questioning an accused's competency." United States v. Pellerito, 878 F.2d 1535, 1544 (1st Cir. 1989). After a careful review of the evidence Mastera offers in support of his claim, we conclude that the district court did not abuse its discretion in denying the request for funds.

Mastera presents four reasons for believing he might qualify for a diminished capacity sentencing departure. The evidence of alcoholism does not help Mastera because § 5K2.13

---

[9]With some qualifications, U.S.S.G. § 5K2.13 recommends a sentence below the otherwise-applicable range if "the defendant committed the offense while suffering from a significantly reduced mental capacity."

specifically prohibits a court from granting a diminished capacity downward departure if "the [defendant's] significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." This prohibition is buttressed by the policy statement in § 5H1.4 that "[d]rug or alcohol dependence or abuse is not a reason for a downward departure." Thus, Mastera's alcoholism can be eliminated as an argument in favor of granting funds for a psychological evaluation. Moreover, current insomnia and racing thoughts, while indicative of some level of mental distress, are not probative as to Mastera's mental condition at the time he committed the crime of unlawfully possessing a firearm.

As to the child abuse, Mastera presented the sentencing court with a letter he had handwritten, entitled "My Life," that described his violent and abusive childhood. Before imposing the sentence, the judge stated that he had received this document and "reviewed it closely." Mastera argues that this case is comparable to the Ninth Circuit's decision in United States v. Brown, 985 F.2d 478 (9th Cir. 1993), which held that a district court had discretion to consider a defendant's account of "severe abuse and neglect" during his childhood. Id. at 481. However, the sentencing court in Brown explicitly stated its desire to depart downward but concluded that it did not have the authority to do so, and the Ninth Circuit held that it did, in fact, have that authority. See id. at 480, 483. In this case, by contrast, the

sentencing court did read and consider Mastera's submission about the childhood abuse he suffered.

Finally, Mastera alleged to the district court, without providing specifics, that he had "some history of psychological care during a prior incarceration." He argues that this allegation brings him within the ambit of Pellerito, in which the defendant moved for permission for a psychological evaluation and alleged, inter alia, "that he was a long-time drug abuser [and] that he had been treated previously for mental illness." Pellerito, 878 F.2d at 1545. We held that the defendant's motion should have been granted. However, Pellerito is distinct from this case in one important way.[10] In Pellerito, the defendant's "medicinal regimen," consisting of sedatives and anti-anxiety medications, was, at the time the request for an expert was made, "a matter of record." Id. Mastera, in contrast, told the judge he was not on any medication, and, importantly, provided no corroborating evidence of any kind that he had a history of treatment for mental illness.

Having considered all the foregoing factors, we conclude that it was not an abuse of discretion for the judge to determine there was no warrant for Mastera to receive a psychological evaluation.

_____

[10]Mastera contends that the only difference between the two cases is that the defendant in Pellerito was able to pay for his own psychological expert, whereas Mastera is unable to do so. This, however, is not a dispositive distinction. See Abreu, 202 F.3d at 391.

-15-

### III. Conclusion

The district court's denial of defendant's motion for funds for a psychological examination and the defendant's sentence are **affirmed**.