246 P.3d 768 (2011)
YAKIMA County, a political subdivision of the State of Washington, Respondent,
v.
YAKIMA HERALD-REPUBLIC, a Washington corporation, Appellant, and
Jose Luis Sanchez, Jr., Interested Party.
No. 82229-8.
Supreme Court of Washington, En Banc.
Argued March 9, 2010.
Decided January 13, 2011.
*769 Michele Lynn Earl-Hubbard, Christopher Roslaniec, Allied Law Group, L.L.C., David M. Norman, Lee Smart P.S., Inc., Seattle, WA, Greg Overstreet, Allied Law Group, L.L.C., Olympia, WA, Brendan V. Monahan, Stokes Lawrence Velikanje Moore & Shore, Yakima, WA, for Petitioner/Appellant.
Paul Edward McIlrath, Stefanie Jean Weigand, Terry Dee Austin, Kenneth W. Harper, Menke Jackson Beyer Ehlis & Harper, L.L.P., Yakima, WA, for Appellee/Respondent.
Susan F. Wilk, Gregory Charles Link, David L. Donnan, Washington Appellate Project, Seattle, WA, for Jose Luis Sanchez, Jr.
MADSEN, C.J.
¶ 1 This case raises several issues, including (1) whether documents provided by an indigent defendant's counsel to a superior court judge to obtain funding for expert services, attorney fees and other defense costs and related documents are judicial documents governed by the court rules for disclosure or by the Public Records Act (PRA) applicable to nonjudicial agencies; (2) whether a trial court has authority to hear a motion to unseal previously sealed court records related to funding the defense of an indigent criminal defendant while the criminal conviction is on appeal or must seek approval from the appellate court pursuant to RAP 7.2; and (3) whether a motion for limited intervention by a newspaper in a criminal case for the limited purpose of revisiting orders sealing financial documents for funding for an indigent criminal defendant's defense is proper.
¶ 2 Consistent with long standing law and our recent decision in City of Federal Way v. Koenig, 167 Wash.2d 341, 217 P.3d 1172 (2009), we reaffirm that the documents prepared by court personnel in connection with court cases and maintained by the court are judicial documents governed by the court rules for disclosure and not the PRA. Further, *770 we hold that such documents, when transferred to nonjudicial county entities, are governed by the PRA unless they are subject to a protective order. We also hold that a trial court has jurisdiction to consider a motion to unseal court documents and is not required to seek permission from an appellate court pursuant to RAP 7.2 when the sealing order will not impact a separate decision on appeal and that a limited intervention by a third party in a criminal case after trial to review a prior sealing decision is a proper procedure, modifying our decision in State v. Bianchi, 92 Wash.2d 91, 593 P.2d 1330 (1979). In the interests of judicial economy, we remand to the trial court to determine whether continued sealing of these financial documents is proper pursuant to GR 15(e) given the current posture of the criminal case. Finally, with regard to documents held by nonjudicial branch agencies, we reverse the trial court and remand for the county to comply with the PRA consistent with this opinion.

FACTS
¶ 3 In early 2005, Mr. Jose Luis Sanchez Jr. and Mr. Mario Gil Mendez were charged with two counts of aggravated first-degree murder, among other offenses, and the Yakima County prosecutor issued a notice that it was considering the death penalty for both defendants.
¶ 4 Sanchez and Mendez were determined to be indigent, and each was appointed attorneys to provide for his defense at public expense as required by the federal and state constitutions.
¶ 5 Given the seriousness of the charges, the Yakima County Superior Court assigned two judges to this case, the Honorable C. James Lust and the Honorable James P. Hutton. Judge Lust was assigned the financial aspects of the case and Judge Hutton was assigned the trial. Accordingly, the defendants' attorneys generally submitted requests for funding for defense costs to Judge Lust, who rules on the motions concerning funding. The parties refer to Judge Lust as the "financial judge" or the "budget judge."
¶ 6 Pursuant to CrR 3.1(f), the attorneys' requests for funding and reimbursement were made ex parte in order to protect defense strategies and client confidences from the prosecutor.[1] The defendants' appointed attorneys made numerous requests to the superior court for funds to retain experts and consultants, such as investigators, translators, and psychologists, to assist in the preparation of mitigation packages and the defenses of each defendant. A mitigation package is presented to a prosecutor prior to a final decision on whether to seek the death penalty.[2] The defendants' attorneys also made requests for other costs associated with their representation, including travel expenses to conduct witness interviews and to hire jury consultants, and submitted invoices for their own fees.
*771 ¶ 7 Throughout their preparations, the defendants' attorneys requested that these financial documents, which included detailed supporting motions explaining why and how a specific expert or consultant or travel was necessary for defense preparations, as required by CrR 3.1(f), be kept confidential. Judge Lust (and on at least one occasion Judge Hutton) ruled on the attorneys' requests and issued orders sealing all financial documents in these two cases. The superior court also sealed all of the orders that sealed the financial documents, effectively resulting in "double sealing" of all of the sealing orders. The superior court issued numerous orders to the superior court administrator's office permitting judicial personnel in that office to review documents for the limited purpose of facilitating reimbursement for defense services authorized by the court.
¶ 8 After a trial in the Yakima County Superior Court, Sanchez was found guilty of first-degree murder and he appealed his conviction. Mendez pleaded guilty and his criminal case is closed.
¶ 9 In March 2008, after Sanchez's trial but while his case was on appeal, the Yakima Herald-Republic (the Herald-Republic or the paper) contacted Sanchez's and Mendez's attorneys, the Yakima County prosecutor, and the Yakima County Superior Court to unseal all of the financial documents in the two cases related to defense costs. The Yakima-Herald stated that while it knew the total amount spent on its defenses, the paper wanted more details about how the money was spent. The paper attempted to obtain an agreed stipulation from the parties to unseal the financial records but was unable to do so.
¶ 10 On March 7, 2008, the Herald-Republic made a motion to intervene in the two criminal actions for the limited purpose of challenging the continued orders sealing the pleadings and other financial documents related to the court-appointed defense costs in State v. Sanchez, No. 05-1-00459-8 (Yakima County Super. Ct., Wash. Jan. 10, 2008), and in State v. Mendez, No. 05-1-00507-1 (Yakima County Super. Ct., Wash. Oct. 24, 2008). The Herald-Republic urged the court to revisit the sealing decisions, and argued that after balancing the public's right to open proceedings with the defendants' rights, the public's right should prevail with regards to the financial documents. The paper reasoned: "The criminal proceedings have concluded; the defendants' right to a fair trial has been preserved. The public now deserves to know how much the preservation of those rights cost." Clerk's Papers (CP) at 138.
¶ 11 In March and April 2008, Judge Lust of the Yakima County Superior Court held at least two telephonic hearings to discuss the Herald-Republic's motion to intervene and unseal records. Both Sanchez's counsel and Mendez's counsel opposed the paper's motion. Sanchez's counsel argued that unsealing (1) would be premature given that Sanchez's criminal case was on appeal and (2) required permission from the Court of Appeals.
¶ 12 Mendez's counsel asserted that the limited intervention in these criminal cases was improper under State v. Bianchi, 92 Wash.2d 91, 593 P.2d 1330 (1979). Mendez's counsel also argued that the court documents were governed by the PRA but were exempt under specific exemptions under the PRA. In response, the paper argued that the PRA "does not apply to the facts of this case" because the judicial branch of government is not an agency within the meaning of the PRA under settled case law. CP at 183-84.
¶ 13 At the April 25, 2008 hearing, Judge Lust determined that, because Sanchez's case was still on appeal, RAP 7.2 required permission from the appellate court to enter an order modifying the prior sealing orders.[3] *772 Despite briefing and argument from the parties, Judge Lust did not rule on the paper's motion to unseal financial documents.
¶ 14 On May 13, 2008, the Herald-Republic sought an order from the Court of Appeals pursuant to RAP 7.2(e) authorizing the trial court to enter a decision on its motion to intervene and unseal records "pursuant to the analytical framework set forth in Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 36, 640 P.2d 716 (1982)." CP at 269.
¶ 15 In early June 2008, the Herald-Republic refocused its approach to obtaining the desired court records. On June 5, 2008, the paper's counsel sent a letter to three individuals, Mr. Harold Delia, Yakima County court administrator; Ms. Kim E. Eaton, clerk of Yakima County Superior Court; and Ms. Stormy Miller, Yakima County public records officer, making a PRA request pursuant to chapter 42.56 RCW. The paper requested:
all records, including attorney billing records, invoices, and supporting documentation, of public funds spent for private legal counsel, including associated costs of such representation in the matters of State v. Sanchez, Yakima County Cause No. 05-1-00459-8 and State v. Mendez, Yakima County Cause No. 05-1-00507-1. This includes records retained, owned, used, or prepared by the Yakima County Superior Court, Yakima County Court Administrator's Office, Yakima County Prosecuting Attorney's Office, or any of their agents.
CP at 339.
¶ 16 In its request, the Herald-Republic cited the 2007 amendment to RCW 42.56.904, stating that the amendment clarified that the "`public's interest in open, accountable government includes an accounting of any expenditure of public resources [. . .] upon private legal counsel or private consultants.'" CP at 339 (quoting RCW 42.56.904).
¶ 17 On June 9, 2008, a few days prior to oral argument in the Court of Appeals, the Herald-Republic withdrew its underlying motion in the Yakima County Superior Court to intervene and unseal court records. The newspaper did not seek authorization under RAP 7.2 for the trial court to enter a decision on its motion to intervene and unseal records for review under GR 15(e).
¶ 18 On June 13, 2008, Mr. Paul E. McIlrath, senior deputy prosecuting attorney for Yakima County, responded to the paper's PRA request. He sent a letter to the paper's counsel explaining that (1) the specific billing records requested pertaining to the two criminal cases were sealed court records and could be obtained only through an order of the court unsealing the records; (2) court records were not public agency records within the meaning of chapter 42.56 RCW, citing case law; and (3) the Yakima County Prosecuting Attorney's Office, a public agency under the PRA, did not have any of the relevant records.
¶ 19 McIlrath noted, however, that he learned through his investigation that certain defense billing records had been provided to certain public agencies, such as the county auditor's office for payment purposes and the county board of commissioner's office for budgeting purposes. However, he stated that "those records are not organized by case number and we would need to search by vendor (payee) name and batch number. Moreover, the only information one could receive would be the payee's identity, the date and the amount of payment." CP at 342. The county said it was unclear whether the Yakima County Superior Court considered its order sealing the court records to include "all related billing records" held outside the court and was concerned with the impact of the paper's request on vital governmental functions, such as the ability of the defendants to have a fair trial, as well as attorney-client confidentiality. Id.
¶ 20 As to the records held by the auditor's office, McIlrath suggested a number of alternative avenues to obtain the records held outside of the court, such as by seeking records from the agency that facilitated the *773 hiring of defense attorneys or by checking with the Yakima County Auditor's Office. He cautioned, though, that if the paper wanted those records "it will be necessary for this office to seek guidance from the Court pursuant to the provisions of RCW 42.56.540."[4]Id. McIlrath ended his response by expressing a desire to "work out a process for proceeding in a cooperative manner." Id.
¶ 21 On June 18, 2008, the Herald-Republic's counsel contacted Yakima County via e-mail, asserting that the county's response was inadequate under RCW 42.56.520. The paper argued that while it could obtain the documents directly from the Yakima County Superior Court, "we have nevertheless elected to focus our efforts on the County, as its duty to maintain and provide outside lawyers' billing records is explicitly recognized in RCW 42.56.904."[5] CP at 343 (emphasis omitted).
¶ 22 The paper stated that it was irrelevant that the requested documents were held by the court. The paper also asserted that the only reason the requested documents were located within the judiciary was "a result of Yakima County's curious decision to ask the local judges to perform the administrative function of approving the expenditure of taxpayer funds to defend outsider lawyer billings." Id.
¶ 23 If the Herald-Republic did not receive a satisfactory answer by the end of the day, its counsel threatened to commence litigation immediately.
¶ 24 Over the next two days, both the county and the Herald-Republic brought suit. On June 19, 2008, Yakima County submitted its motion for relief pursuant to RCW 42.56.540 to enjoin the Herald-Republic from gaining access to sealed superior court records because the PRA did not apply or, alternatively, pursuant to chapter 7.24 RCW, to have the county's responsibilities with respect to the paper's public records request declared and delineated.
¶ 25 On June 20, 2008, the Herald-Republic filed suit seeking either declaratory relief that the county violated its duties under the PRA, seeking the financial documents as well as statutory fees and penalties, or a writ of mandamus requiring the Yakima County Superior Court to unseal the financial records subject to redaction for attorney work-product and privileged information.
¶ 26 On June 24, 2008, Sanchez's counsel moved to intervene to seek a declaratory judgment that the Herald-Republic was not entitled to access sealed court files by way of the PRA.
¶ 27 On June 28, 2008, the Honorable Michael E. Cooper heard oral argument on the county's expedited motion. The trial court consolidated the county's and the paper's actions because they involved the same subject matter and granted Sanchez's counsel's motion to intervene in both matters. During oral argument, the Yakima-Herald explained that it sought three categories of documents: (1) attorney billing records submitted to the court, including fees spent on experts and other vendors; (2) the court's orders granting requests for defense costs; and (3) worksheets or spreadsheets created by the court administrator's office related to the court's orders to track payments for each case.
¶ 28 On June 30, 2008, the trial court issued a memorandum decision, determining that the PRA had no application to the Herald-Republic's request. Because the documents sought were court documents, not *774 county documents, the trial court reasoned that GR 15(e) governed the grounds and procedures for unsealing the records to obtain access.[6]
¶ 29 On August 1, 2008, the trial court issued orders granting the county's motion for injunctive relief and denying the newspaper's complaint for statutory penalties under chapter 42.56 RCW, incorporating Judge Cooper's memorandum decision.
¶ 30 The Herald-Republic moved for reconsideration. On September 2, 2008, the trial court denied the motion. In its order, the trial court explained:
The Yakima Herald-Republic at the hearing on June 26, 2008 and in its motion for reconsideration goes to great lengths to persuade this court that because the budget judge was not the trial judge he was, therefore, acting in a purely administrative capacity which would subject him and the courts to the Public Records Act. This court disagrees. Courts have inherent authority to control their records and proceedings. Nast v. Michels, 107 Wash.2d 300, 305 [730 P.2d 54] (1986); Cowles Publishing Co. v. Murphy, 96 Wash.2d 584, 588 [637 P.2d 966] (1981). Having a financial judge administer the costs of an aggravated first degree murder case is no less judicial just because the financial judge was not the actual trial judge. Every case bears its administrative aspects and the fact two judges were involved does not detract from the fact the judiciary administered these cases, not the legislative or executive branches of Yakima County or the State of Washington. In the end, quite simply it's a matter of separation of powers wherein the judiciary has the authority over the conduct and administration of criminal cases.
CP at 19. The trial court explained that the PRA was not the vehicle to use to review sealed records. Rather, the procedure to use was the one specified by the court rules, specifically GR 15, to unseal the records.
¶ 31 Additionally, the court reiterated the suggestion it made in its memorandum decision of June 30, 2008 (and then again in its later order) that the paper approach Judge Lust with a GR 15(e) motion for the records related to Mendez's defense costs. The court explained that "because Mendez has evidently been resolved for all time it would seem Judge Lust would have the ability to hear a GR 15 motion on the records sealed in that case" and "[p]erhaps the specific time to keep the records sealed in [that case] has passed." CP at 18. With regard to the financial records for defendant Sanchez, the trial court reasoned that the same process would apply but that the active appeal "may complicate the motion." Id. Earlier, the trial court stated that a GR 15(e) motion to unseal "may very well involve application of RAP *775 7.2."[7] CP at 10 (Mem. Dec. of June 30, 2008). The trial court's order did not directly address the relevant financial records, if any, held by nonjudicial county entities.
¶ 32 The Yakima-Herald appealed, and we accepted direct review.

ANALYSIS
¶ 33 A trial court reviews an agency's action under the PRA de novo. RCW 42.56.550(3) (providing that "[j]udicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo"). When the record before the trial court consists entirely of "documentary evidence, affidavits and memoranda of law," this court stands in the same position as the trial court and reviews the trial court's decision de novo. Morgan v. City of Federal Way, 166 Wash.2d 747, 753, 213 P.3d 596 (2009); Limstrom v. Ladenburg, 136 Wash.2d 595, 612, 963 P.2d 869 (1998). In this case, our review is de novo.
¶ 34 The PRA is a "`strongly worded mandate for broad disclosure of public records.'" Soter v. Cowles Publ'g Co., 162 Wash.2d 716, 731, 174 P.3d 60 (2007) (quoting Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978)). The PRA must be "liberally construed and its exemptions narrowly construed" to ensure that the public's interest is protected. RCW 42.56.030; Koenig, 167 Wash.2d at 344, 217 P.3d 1172. But where an exemption applies, disclosure is not appropriate. RCW 42.56.070; Soter, 162 Wash.2d at 731, 174 P.3d 60.
¶ 35 Because this case involves records held by the Yakima County Superior Court and by other county entities, we will first consider the arguments related to the court records held by the court.

I. Records held by the court
¶ 36 The Herald-Republic contends that the trial court erred by ruling that the PRA did not apply to court documents. The paper's central argument is that records related to defense costs are administrative records and that when the court acts in its administrative capacity, it should be considered an "agency" under the PRA. The newspaper urges this court to reconsider its decision in Nast v. Michels, 107 Wash.2d 300, 730 P.2d 54 (1986), which held to the contrary. The PRA applies only to the public records of an "agency" as defined by the act. RCW 42.56.070, .100.
¶ 37 We have already declined the Herald-Republic's invitation to revisit Nast in our recent decision in Koenig, which was decided after the parties' briefing but five months prior to oral argument, where we affirmed Nast.[8] In Koenig, David Koenig, an individual, made a public records request to the city of Federal Way for documents related to the resignation of a municipal court judge, as well as documents related to job-related exemptions *776 for jury duty and appointment of pro tempore judges. The city of Federal Way provided more than 180 responsive documents, but did not provide court documents, such as correspondence with the presiding Federal Way municipal court judge, as they were not subject to the PRA. Id. at 344, 217 P.3d 1172. The city moved for injunctive relief, arguing that the municipal court was not subject to the PRA. Koenig filed a cross motion for summary judgment, requesting the court hold that the PRA applied to the court and that the city violated the PRA by withholding court documents. Id. at 343, 217 P.3d 1172. The trial court granted the city's motion and denied Koenig's.
¶ 38 In direct review, this court declined Koenig's invitation to overrule Nast:
This court has already ruled on the issue of whether the judiciary is subject to the PRA, and Koenig has not demonstrated that the established rule is incorrect or harmful. Therefore, we affirm the trial court's holding that the PRA does not require the City to release the requested judicial records because the PRA does not apply to the judiciary.
Koenig, 167 Wash.2d at 348, 217 P.3d 1172. The city was also not subject to the log requirement because the withheld documents were not public records under the PRA. Id. at 348 n. 3, 217 P.3d 1172.
¶ 39 In this case, as in Koenig, the documents requested from the Yakima County Superior Court, the Yakima County Clerk's Office, and the Yakima County Court Administrator's Office are judicial documents. These documents consist of (1) orders from the Yakima County Superior Court granting funds for the defense of Sanchez; (2) attorney invoices submitted to the superior court for reimbursement for attorney fees, experts and other associated costs of defense; and (3) worksheets or spreadsheets maintained by the Yakima Superior Court Administrator's Office to track these payments. All of these documents are held by the judiciary. Accordingly, the PRA does not govern these documents.
¶ 40 The Herald-Republic, however, contends that the use of a second judge, Judge Lust (a "budget judge") in the criminal matter, changes the character of the documents from judicial documents to administrative documents, subject to the PRA. The paper claims that the only reason the requested documents are located within the judiciary is
a result of Yakima County's curious decision to ask the local judges to perform the administrative function of approving the expenditure of taxpayer funds to defend outside lawyer billings.
CP at 343 (emphasis added).
¶ 41 This contention is without merit. Judge Lust is a judge in the Yakima County Superior Court, acting in the context of a criminal case. Given the severity of the criminal charges, the superior court decided to use two judges. This practice is not uncommon. See, e.g., People v. Anderson, 43 Cal.3d 1104, 1132-33, 742 P.2d 1306, 240 Cal. Rptr. 585 (1987) (explaining that by statute in California, two judges must be used in capital cases involving indigent defendants, "a judge of the court, other than the trial judge presiding over the capital case in question" must decide the reasonableness of all applications for funding for experts requested by the criminal defendant's counsel (citations omitted)).
¶ 42 Moreover, having the judiciary make decisions on funding requests made by counsel for an indigent defendant's criminal defense is not a "curious decision"the requirement for defense funding is constitutionally mandated and the relevant rules expressly discuss ex parte hearings to approve such funding. See, e.g., CrR 3.1(f)(1)-(2) (providing in part that an indigent defendant's motion to the court to obtain "investigative, expert or other services necessary to an adequate defense" may be made "ex parte" to the court and such records may be sealed upon good cause); State v. Poulsen, 45 Wash.App. 706, 726 P.2d 1036 (1986) (explaining that CrR 3.1(f) incorporates the "constitutional right of an indigent defendant to the assistance of expert witnesses"; discussing key constitutional cases, including Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)); Wash. State Bar Ass'n, STANDARDS FOR INDIGENT DEFENSE SERVICES, std. 4: Responsibility for *777 Expert Witnesses (2007) (providing in part that "[r]equests for expert witness fees should be made through an ex parte motion"). The federal rules for indigent defendants in criminal cases are similar. See 18 U.S.C. § 3006A(e) (providing in part that "counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application"). Thus, Judge Lust's actions in reviewing defense funding requests, part of Sanchez's criminal case, are squarely part of a judicial proceeding. The judge's role is not some "curious" action taken by Yakima County as alleged by the paper such that documents within the judiciary are no longer judicial documents. The trial court was correct in its analysis:
Having a financial judge administer the costs of an aggravated first degree murder case is no less judicial just because the financial judge was not the actual trial judge. Every case bears its administrative aspects and the fact two judges were involved does not detract from the fact the judiciary administered these cases, not the legislative or executive branches of Yakima County or the State of Washington. In the end, quite simply it's a matter of separation of powers wherein the judiciary has the authority over the conduct and administration of criminal cases.
CP at 19. And it is without question that the court has inherent authority to control its own documents. Id. (citing Nast, 107 Wash.2d at 305, 730 P.2d 54; Cowles Publishing Co. v. Murphy, 96 Wash.2d 584, 588, 637 P.2d 966 (1981)). The documents, like Judge Lust's role, are plainly part of judicial activity in a criminal case and are judicial documents governed by court rules regarding disclosure, not the PRA, which governs nonjudicial agencies.
¶ 43 The Herald-Republic asserts, though, that unless the PRA applies to these documents, a "black hole" of public access to court documents will result. Br. of Appellant at 35. The paper is incorrect. The trial court correctly pointed out that court documents are generally accessible to the public under the court rules and directed the paper to follow the rules outlined in GR 15(e) to unseal the court records. Moreover, the Herald-Republic received the court records regarding public financing of Mendez's defense costs in his criminal case initially requested with Sanchez's records, after following GR 15(e). See Appellant Yakima Herald-Republic's Reply to Resp. of Sanchez & Yakima County, Attach. A (attaching samples of Mendez's financial documents received by the paper after following the court process for unsealing); State v. Mendez, 157 Wash.App. 565, 238 P.3d 517 (2010) (releasing records after affirming trial court's order disclosing redacted copies of Mendez's records).
¶ 44 Next, the newspaper asserts that RCW 42.56.904, a statutory provision clarifying that attorney fee invoices are not to be withheld in their entirety under the PRA, will be rendered meaningless unless the PRA applies to these court records. The paper is mistaken.
¶ 45 As explained in West v. Thurston County, 144 Wash.App. 573, 183 P.3d 346 (2008), the legislature enacted RCW 42.56.904 following the trial court's dismissal of a public records request for attorney fee invoices in that case. The request in West related to attorney fee invoices to Thurston County from a private law firm hired by Thurston County to defend itself in an employment discrimination case.
¶ 46 In January 2002, several former Thurston County prosecutors brought a civil suit against Thurston County alleging hostile work environment and retaliation. Broyles v. Thurston, 147 Wash.App. 409, 421-22, 195 P.3d 985 (2008). In November 2006, after a three week jury trial, the jury found for the plaintiffs, awarding approximately $1.5 million in damages, and the trial court later awarded the plaintiffs approximately $1.3 million in attorney fees under the relevant statutory provisions. Id. at 423, 195 P.3d 985. The trial court's awards of damages and attorney fees were later affirmed by the Court of Appeals.
¶ 47 After trial, the plaintiffs in Broyles requested the attorney invoices from the law firm hired by Thurston County to support the plaintiffs' own posttrial motion for attorney *778 fees. West, 144 Wash.App. at 583 n. 6, 183 P.3d 346. The trial court in Broyles denied the plaintiffs' request, finding that the attorney fee invoices (1) were not relevant (and hence not discoverable) at that time due to the plaintiff's narrow purpose of proving their requested fees and (2) contained privileged information. Id. The trial court stated that such invoices may become relevant (and hence discoverable) at a later time. Id.
¶ 48 In March 2007, the trial court in West dismissed West's public records request to Thurston County for the same attorney fee invoices requested by the plaintiffs in Broyles, relying on the trial court's denial in Broyles under the discovery rules for justification.[9] Shortly thereafter, the legislature enacted RCW 42.56.904 as a result of the West/Broyles litigation to clarify that discovery rules, as they applied to attorney fees paid by a public agency, do not exempt attorney fee invoices in their entirety under the PRA. West, 144 Wash.App. at 581-84, 183 P.3d 346 (citing extensive legislative history).
¶ 49 In May 2008, the Court of Appeals reversed the West trial court and remanded for disclosure of the attorney fee invoices not yet provided, relying in part on the legislature's enactment of RCW 42.56.904. Id. at 583, 183 P.3d 346 ("We often apply statutory amendments retroactively if the legislature acted during a controversy regarding the meaning of the law because the legislature's timing reflects its intent to cure or clarify a statute.").
¶ 50 The paper fails to read RCW 42.56.904 in the context of this history. The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose. In re Parentage of J.M.K., 155 Wash.2d 374, 387, 119 P.3d 840 (2005); Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004). This is done by considering the statute as a whole, giving effect to all that the legislature has said, and by using related statutes to help identify the legislative intent embodied in the provision in question. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 11, 43 P.3d 4 (2002). RCW 42.56.904 is within the PRA and applies to public agencies as defined in the PRA. The provision does not alter or modify the definition of a "public agency" as defined in the PRA. Moreover, as the West case makes clear, this statutory provision remains effective and is not "meaningless" despite the fact that RCW 42.56.904 does not apply to judicial documents held by the judiciary.
¶ 51 Next, the Herald-Republic raises a number of concerns regarding the challenges it faced during its initial attempt to unseal the court records in front of Judge Lust pursuant to GR 15(e). Specifically, the paper faced arguments (1) regarding the trial court's jurisdiction to decide its GR 15(e) motion and (2) regarding the paper's standing to intervene. Additionally, the paper alleges that its GR 15(e) motion was complicated by the fact that the initial sealing orders were not in compliance with GR 15(c). We address each in turn.
¶ 52 First, as discussed above, in April 2008 Judge Lust held that the trial court did not have jurisdiction to decide the Herald-Republic's motion to unseal the court records without leave from the appellate court under RAP 7.2(e) because Sanchez's criminal case was on appeal in the Court of Appeals. This is a misreading of the rules. RAP 7.2(a) provides in relevant part that after an appellate court accepts review of a trial court decision, "the trial court has authority to act in a case only to the extent provided in this rule." RAP 7.2(e) then explains that the trial court has authority to hear "actions to change or modify a decision that is subject to modification by the court that initially made the decision." (Emphasis added). Pursuant to GR 15(e), a trial court has authority to revisit a prior decision to *779 seal court records and may unseal the records.
¶ 53 RAP 7.2(e) further provides that a trial court wishing to change or modify an earlier decision must obtain permission from the appellate court to do so, but only if "the trial court determination will change a decision then being reviewed by the appellate court." In this case, the Court of Appeals was not asked to review the trial court's earlier decisions in Mr. Sanchez's case to seal the financial records related to defense costs. Thus, any decision by the trial court to modify its prior sealing orders would not relate to the "decision" on appeal (the conviction and sentencing).[10] Thus, in April 2008, Judge Lust did have jurisdiction to decide the Herald-Republic's motion to unseal the financial records and was not required under RAP 7.2(e) to seek permission from the Court of Appeals.
¶ 54 Second, the Herald-Republic was challenged by at least one of the parties as to its standing when it attempted to unseal the court records pursuant to GR 15(e). During the March and April 2008 hearings in front of Judge Lust, Mendez's counsel argued that the Herald-Republic had no standing to intervene in Sanchez's and Mendez's criminal cases given this court's holding in State v. Bianchi, 92 Wash.2d 91, 593 P.2d 1330 (1979).
¶ 55 Mendez's counsel continued to assert that the paper lacked standing after the Herald-Republic followed Judge Cooper's suggestion set forth in the trial orders and judgment of this case, CP at 7-20, and filed a second motion to intervene and to unseal the financial records in Mendez's closed criminal case. The trial court granted both of the paper's motions, and in August 2010, after oral argument in this case, the Court of Appeals affirmed the trial court's order granting the Herald-Republic's limited intervention. Mendez, 157 Wash.App. 565, 238 P.3d 517. In affirming the trial court, the court in Mendez distinguished Bianchi, concluding that it did not apply to closed criminal cases.
¶ 56 In Bianchi, this court reversed a trial court's order permitting a newspaper to intervene in a criminal matter prior to trial to challenge a trial court's order sealing the affidavit of probable cause determination. Bianchi, 92 Wash.2d at 92, 593 P.2d 1330. Both the prosecution and defense moved to seal the document in the highly publicized matter to preserve the defendant's right to a fair trial. Id. This court concluded that a limited intervention in a criminal proceeding was improper given the lack of rule, statute or precedent that would allow a third party to intervene in a criminal manner. Id. We determined that the paper had no direct interest that would "justify its intervention and the disruption of the pending criminal proceedings" and discussed three out-of-state cases from the 1970s with similar holdings. Id. at 92-94, 593 P.2d 1330. We held that the newspaper's remedy lies instead in a separate action for "declaratory judgment, mandamus, or prohibition." Id. at 93, 593 P.2d 1330.
¶ 57 As the Court of Appeals in Mendez reasoned, Bianchi is factually distinguishable. There the request to intervene was made pretrial while in Mendez the Herald-Republic moved to intervene after the defendant pleaded guilty. Additionally, as the court pointed out, many of the considerations supporting our decision in Bianchi are no longer true. First, after Bianchi was decided this court adopted GR 15 in order to create "a uniform procedure for the destruction, sealing, and redaction of court records." GR 15(a). Although not explicit, subsection (e)(2) of the rule anticipates that nonparties may move to unseal records in a criminal case and provides for notice to affected parties. Second, both state and federal courts *780 that have considered this issue since Bianchi generally favor limited intervention in such cases, despite the absence of express language permitting intervention in the Federal Rules of Criminal Procedure or the state procedural rules at issue. See, e.g., Stephens Media v. Eighth Judicial Dist. Court, 221 P.3d 1240 (Nev.2009) (Nevada Supreme Court held that public and press have a right to seek limited intervention to assert public access regarding court proceedings); United States v. Aref, 533 F.3d 72 (2d Cir. 2008) (motion to intervene in criminal case appropriate procedural mechanism to assert public's First Amendment rights); In re Associated Press, 162 F.3d 503 (7th Cir.1998) (finding limited intervention proper). We also agree with the policy reasons cited in Mendez supporting limited interventionthe procedure allows the criminal defendant to be a necessary party and allows for counsel for indigent defendants. Finally, Bianchi's concern with disrupting the pending criminal proceedings is not implicated once the trial has ended.
¶ 58 We hold that a limited intervention to revisit a prior sealing decision under GR 15(e) is a proper procedure for nonparties to use in a criminal case when a trial has been completed and we modify Bianchi to the extent it is contrary.[11]
¶ 59 Next, the newspaper points out a number of violations of the original sealing that complicated its initial proceeding under GR 15(e). We agree that there were violations of GR 15. For example, GR 15(c) requires a court (1) to conduct a hearing to determine if sealing is warranted[12] and (2) to make and enter written findings for its reasons for sealing a court document. Additionally, a court's order to seal documents and written findings supporting the order to seal documents must be made available to the public. GR 15(c)(5). In this case, the court failed to make and enter written findings giving its reasons for sealing these documents and failed to make public its relevant sealing orders and written findings.[13]
¶ 60 Finally, the paper urges that in addition to the requirements of GR 15, the trial court must apply the Ishikawa test when sealing and unsealing records. It argues that the budget judge failed to consider the Ishikawa factors when sealing the records and that Judge Cooper erred by failing to address the newspaper's constitutional right of access when the court relied on the budget judge's sealing order. In the interests of judicial economy the paper asks this court to direct the court on remand to consider its constitutional right to the records.
¶ 61 This court has recognized that the Ishikawa factors may have application in the context of sealing or unsealing records. See, e.g., Dreiling v. Jain, 151 Wash.2d 900, 909-10, 93 P.3d 861 (2004). However, we have also recognized that the constitutional right to an open court does not apply to all court records. Id. In Dreiling we held that mere discovery (as opposed to documents attached to dispositive motions) may be sealed "for good cause shown" and "article I, section 10 does not speak to its disclosure." Id.
¶ 62 Moreover, it is necessary to distinguish between the common law right to inspect and copy court records, Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (recognizing common law right to access court case files), and the constitutional right to a public *781 trial and open courts. The United States Supreme Court has repeatedly held that "the First Amendment generally grants the press no right to information about a trial superior to that of the general public." Id. at 609., 98 S.Ct. 1306 "The requirement of a public trial is satisfied by the opportunity of members of the public and press to attend the trial and to report what they have observed." Id. at 610, 98 S.Ct. 1306.
¶ 63 In Ishikawa, the issues were whether the courtroom should have been closed during a pretrial hearing to dismiss a criminal case and whether continued sealing of the hearing transcript was proper. As to the first, this court ruled no. As to the second, the court remanded for consideration of the sealing order under the heavy test set forth in First Amendment jurisprudence and adopted/modified by our court in Federated Publications, Inc. v. Kurtz, 94 Wash.2d 51, 615 P.2d 440 (1980). In reaching its conclusion, the court considered the fact that the suppression motion clearly went to the merits of the criminal case. Further, the court attached significance to the fact that the public had a history of attending such pretrial hearings and there was a clear public benefit to such attendance. See, e.g., Press-Enter. Co. v. Superior Court, 464 U.S. 501, 508-09, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (explaining in part why public presence during voir dire is necessary to ensure fairness and the appearance of fairness).
¶ 64 In contrast to Ishikawa and Press-Enterprise, in this case the orders and documents relate to defense funding, not an issue in the criminal trial. Further, there is no history of public attendance at a hearing to request public funds. Indeed, CrR 3.1(f) provides that motions for defense expenditures may be made ex parte. Finally, attendance at such a proceeding would hurt the overall process of providing the defendant an adequate defense given the need to keep defense strategies from the prosecution, maintain attorney-client confidences, and protect the right against self-incrimination.
¶ 65 As we recognized in Dreiling, there are distinctions to be drawn depending on the nature and use of court records. With respect to these court records we believe that the standards of GR 15 govern.
¶ 66 In the interest of judicial economy, we remand this case for the trial court to conduct a hearing under GR 15(e) to determine if sealing remains appropriate given the current posture of this case.

II. Records held outside the court
¶ 67 We next consider the Herald-Republic's request to the county for documents held outside the judicial branch. As noted earlier, the newspaper argued that while it could obtain the documents directly from the Yakima County Superior Court, "we have nevertheless elected to focus our efforts on the County, as its duty to maintain and provide outside lawyers' billing records is explicitly recognized in RCW 42.56.904."[14] CP at 343 (emphasis omitted).
¶ 68 Relying on our decision in Nast, Sanchez argues that judicial records retain their character as judicial records regardless of where the records are held. We do not read Nast so broadly. In Nast we acknowledged that the definitions of "agency" and "public record" could be read to include the King County Department of Judicial Administration and court records, respectively. Id. at 305, 730 P.2d 54. However, we noted several considerations suggested that the judiciary and its case files are not within the realm of the public disclosure act (PDA), chapter *782 42.17 RCW,[15] including the fact that the common law provides access to court case files, the PDA did not expressly mention courts, and because to interpret the PDA to include court case files "undoes all the developed law protecting privacy and governmental interests." Id. at 307, 730 P.2d 54. In contrast to court records, there is no common law right to access nonjudicial agency records and the agencies here clearly fall within the definition of "agency" in the act. See RCW 42.56.010(1) (defining "agency"). Moreover, in contrast to the PRA's silence regarding court records, RCW 42.56.904 specifically provides for production of the attorney invoices at issue here.
¶ 69 Sanchez also argues that because the records were created by the court or generated for use in court, the court has the inherent authority to control their records. He cites Nixon, 435 U.S. at 598, 98 S.Ct. 1306. Nixon involved a trial court's decision denying a media request to make copies of tape recordings introduced at a criminal trial. The recordings at issue were in the court's possession and the case turned on whether the press has a common law or constitutional right to make recordings of evidence presented in a criminal case. Nixon does not support Sanchez's premise that records sent to other county entities remain court records within the meaning of the PRA and our decision in Nast.
¶ 70 In his memorandum decision, Judge Cooper determined that the PRA had no application to the Herald-Republic's request because the records sought by the paper were court records. However, the trial court was silent as to the requested financial documents, if any, held by the Yakima County Auditor's Office and the Yakima County Board of Commissioners, presumably holding that these documents were covered by the sealing orders and were not covered by the PRA. This was incorrect.
¶ 71 After oral argument, this court requested copies of the orders sealing documents by Judge Lust. Based on our review, it does not appear that the orders expressly applied to those outside agencies. Absent a protective order or other instructions specifically limiting disclosure of judicial documents sent by the court to outside entities, we hold that such documents are no longer judicial documents and hence disclosure is governed by the PRA.
¶ 72 We recognize that the court's failure to adhere to the provisions of GR 15the "double sealing" and the lack of written findings justifying sealingcontributed to the county's predicament of not knowing to what extent the sealing orders covered documents held outside the court. Nevertheless, the burden is on the agency to "make available for public inspection and copying all public records" or identify a specific exemption and provide an explanation of how it applies to the individual agency record. RCW 42.56.070(1), .210(3); Rental Ass'n v. City of Des Moines, 165 Wash.2d 525, 199 P.3d 393 (2009) (construing RCW 42.56.210(3)). "The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part." RCW 42.56.550(1). Finally, and of particular significance here, RCW 42.56.904 requires the county to produce attorney invoices, if any, which are held outside the court, subject to the limitations of that provision.[16]
¶ 73 Here, the County answered the paper's request by stating that it was unclear whether the Yakima County Superior Court considered its order sealing the court records to include "all related billing records" held outside the court, and that it was concerned with the impact of the paper's request on vital governmental functions such as the ability of the defendants to have a fair trial, as well as attorney-client confidentiality. CP at 342. This response is insufficient.
*783 ¶ 74 The county's failure to comply with these requirements is a violation of the PRA.

III. Remedy
¶ 75 The PRA provides that examination of a public record may be enjoined if the court finds that "such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." RCW 42.56.540. The Herald-Republic argues that Judge Cooper erred in granting an injunction because neither party resisting examination of the records identified an exemption nor demonstrated that "irreparable damage" would occur if the records were produced for examination or copying. The paper also argues that the trial court inconsistently ruled in its August 1 order when it held the PRA does not apply but granted an injunction under that statute. These errors, the paper contends, require reversal.
¶ 76 We agree with the Herald-Republic that RCW 42.56.540 does not constitute a substantive basis for a remedy. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 257-58, 884 P.2d 592 (1995) (PAWS). However, the court here found that the records requested by the newspaper were court records and therefore not governed by the PRA. To the extent that the court was correct as a factual matter, an injunction under the PRA was an improper remedy. As to records, if any, held by entities outside the court, we agree with the newspaper that the court erred by treating these records as sealed court records and on that basis the injunction was improper.
¶ 77 Sanchez urges, however, that even if these records are governed by the PRA, the trial court properly withheld them because they are protected as work product under RCW 42.56.290. He also asserts the records are protected by the attorney-client privilege, citing Hangartner v. City of Seattle, 151 Wash.2d 439, 452-53, 90 P.3d 26 (2004) (holding information protected attorney-client privilege under RCW 5.60.060(2)(a) exempt under RCW 42.56.070(1)). Finally, Sanchez argues that exempting the records is required under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, citing RCW 42.56.540 and .210.
¶ 78 Because we do not have the records before us we cannot determine whether Sanchez's claims of work product and attorney-client privilege are viable. However, with respect to RCW 42.56.540, as we noted earlier, this provision is not an exemption. Rather, it is only a procedural statute granting those to whom it applies the right to seek an injunction against disclosure and granting the trial court the authority to enjoin the release of a specific record if it falls within a specific exemption found elsewhere in the act. PAWS, 125 Wash.2d at 257, 884 P.2d 592. The court must find that a specific exemption applies and that disclosure would not be in the public interest and would substantially and irreparably damage a person. Soter, 162 Wash.2d at 757, 174 P.3d 60.
¶ 79 Sanchez also cites RCW 42.56.070(1), exempting records protected by "other statutes." He contends that the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution are "other statutes." While this argument has force, we need not decide that issue here. The Herald-Republic relies on RCW 42.56.904 for documents it seeks. As noted above, under that provision there may be redactions from specific descriptions of work performed "if they would reveal an attorney's mental impressions, actual legal advice, theories, or opinions, or are otherwise exempt under chapter 391, Laws of 2007 or other laws." RCW 42.56.904 (emphasis added). The Herald-Republic concedes and we agree that "other laws" includes the United States Constitution.
¶ 80 The Herald-Republic asks this court to remand to the trial court and order the trial court to conduct an in camera review. Br. of Appellant at 38. It further asks that we order the county to file all responsive public records with the trial court and provide an index to the court and the parties describing the records and the basis for withholding. Id.
¶ 81 We agree with the Herald-Republic that this matter must be remanded. While the county appears to concede there are responsive records held by nonjudicial county *784 entities, these records are not before us to review.
¶ 82 Accordingly, we remand for the trial court (1) to conduct an in camera review of the relevant financial documents (court's orders, attorney invoices, and court worksheets/spreadsheets), if any, held by county entities outside the court and (2) if they exist, to determine if any were accompanied by a protective order or instructions sufficient to retain their character as judicial documents. If not, then the court should consider the parties' claims for exemption, if any, and order the county to produce all nonexempt records, adhering to the PRA requirement for redaction.

IV. Attorneys fees and daily penalties
¶ 83 The Herald-Republic requests an award of attorney fees under RCW 42.56.550(4), which provides that
[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.
¶ 84 As we explained in our recent decision, Sanders v. State, 169 Wash.2d 827, 240 P.3d 120 (2010), costs and reasonable attorney fees may be awarded for vindicating "`the right to inspect or copy'" or "`the right to receive a response.'" Id. at 860, 240 P.3d 120 (quoting RCW 42.56.550(4)). However, penalties are authorized only for denials of "`the right to inspect or copy.'" Id.
¶ 85 Turning first to the paper's request for attorney fees, RCW 42.56.070(1) required the county to "make available for public inspection and copying all public records" or identify a specific exemption and provide an explanation of how it applies to the individual agency record. In its response, the county was equivocal about whether nonjudicial county entities held responsive records. Instead of identifying records, the county shifted the burden to the newspaper, requiring the paper to file a court action. The Herald-Republic is entitled to its costs and reasonable attorney fees. However, we deny the paper's request for daily penalties as premature.

CONCLUSION
¶ 86 We reaffirm long standing case law and hold that the documents prepared by court personnel in connection with court cases and maintained by the court are judicial documents governed by GR 15. Further, we hold that such documents, when transferred to nonjudicial county entities, are governed by the PRA unless they are subject to an additional protective order. We also hold that a trial court has jurisdiction to consider a motion to unseal court documents and is not required to seek permission from an appellate court pursuant to RAP 7.2 when the sealing order will not impact a separate decision on appeal, and that a limited intervention by a third party in a criminal case is a proper procedure after trial has ended. In the interests of judicial economy, we remand to the trial court to determine whether continued sealing of these financial documents is proper pursuant to GR 15(e), given the current posture of the criminal case.
¶ 87 With regard to documents held by nonjudicial branch agencies, we reverse the trial court and remand for the county to comply with the PRA consistent with this opinion. Finally, we award costs and reasonable attorney fees to the Herald-Republic but deny daily penalties as premature.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON AND DEBRA L. STEPHENS, Justices, and RICHARD B. SANDERS, Justice Pro Tem, concurs in result only.
NOTES
[1] CrR 3.1(f), "Services Other Than a Lawyer," provides:

(1) A lawyer for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court.
(2) Upon finding the services are necessary and that the defendant is unable to obtain them, the court, or a person or agency to whom the administration of the program may have been delegated by local court rule, shall authorize the services. The motion may be made ex parte, and, upon a showing of good cause, the moving papers may be ordered sealed by the court, and shall remain sealed until further order of the court. The court, in the interest of justice and on a finding that timely procurement of necessary services could not await prior authorization, shall ratify such services after they have been obtained.
(3) Reasonable compensation for the services shall be determined and payment directed to the organization or person who rendered them upon the filing of a claim for compensation supported by affidavit specifying the time expended and the services and expenses incurred on behalf of the defendant, and the compensation received in the same case or for the same services from any other source.
(Emphasis added.) See also CrRLJ 3.1(f) (same).
[2] According to the parties, in October 2006 the State (Yakima County) announced it would not pursue the death penalty for Sanchez, State v. Sanchez, No. 05-1-00459-8 (Yakima County Super. Ct., Wash. Jan. 10, 2008) and in August 2006 announced the same for Mendez, State v. Mendez, No. 05-1-00507-1 (Yakima County Super. Ct., Wash. Oct. 24, 2008). Thus, these cases were considered death penalty cases for approximately 18-20 months.
[3] RAP 7.2 provides, in relevant part:

(a) Generally. After review is accepted by the appellate court, the trial court has authority to act in a case only to the extent provided in this rule, unless the appellate court limits or expands that authority as provided in rule 8.3.
. . . .
(e) Postjudgment Motions and Actions to Modify Decision. The trial court has authority to hear and determine (1) post judgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to formal entry of the trial court decision. A party should seek the required permission by motion.
[4] Based on the record, the Herald-Republic did not amend its initial request to specifically include documents held by the auditor's office or the county commissioners.
[5] RCW 42.56.904 provides:

It is the intent of the legislature to clarify that no reasonable construction of chapter 42.56 RCW has ever allowed attorney invoices to be withheld in their entirety by any public entity for documents under that chapter. It is further the intent of the legislature that specific descriptions of work performed be redacted only if they would reveal an attorney's mental impressions, actual legal advice, theories, or opinions, or are otherwise exempt under chapter 391, Laws of 2007 or other laws, with the burden upon the public entity to justify each redaction and narrowly construe any exception to full disclosure. The legislature intends to clarify that the public's interest in open, accountable government includes an accounting of any expenditure of public resources, including through liability insurance, upon private legal counsel or private consultants.
[6] GR 15 provides, in part:

(e) Grounds and Procedures for Requesting the Unsealing of Sealed Records.
(1) Sealed court records may be examined by the public only after the court records have been ordered unsealed pursuant to this section or after entry of a court order allowing access to a sealed court record.
(2) Criminal Cases. A sealed court record in a criminal case shall be ordered unsealed only upon proof of compelling circumstances, unless otherwise provided by statute, and only upon motion and written notice to the persons entitled to notice under subsection (c)(1) of this rule except:
(A) If a new criminal charge is filed and the existence of the conviction contained in a sealed record is an element of a new offense, or would constitute a statutory sentencing enhancement, or provide the basis for an exceptional sentence, upon application of the prosecuting attorney the court shall nullify the sealing order in the prior sealed case(s).
(B) If a petition is filed alleging that a person is a sexually violent predator, upon application of the prosecuting attorney the court shall nullify the sealing order as to all prior criminal records of that individual.
(3) Civil Cases. A sealed record in a civil case shall be ordered unsealed only upon stipulation of all parties or upon motion and written notice to all parties and proof that identified compelling circumstances for continued sealing no longer exist, or pursuant to RCW 4.24 or CR 26(j). If the person seeking access cannot locate a party to provide the notice required by this rule, after making a good faith reasonable effort to provide such notice as required by the Superior Court Rules, an affidavit may be filed with the court setting forth the efforts to locate the party and requesting waiver of the notice provision of this rule. The court may waive the notice requirement of this rule if the court finds that further good faith efforts to locate the party are not likely to be successful.
[7] RAP 7.2, "Authority of Trial Court After Review Accepted," provides in relevant part:

(e) Postjudgment Motions and Actions to Modify Decision. The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion.
(Emphasis added.)
[8] In Nast, 107 Wash.2d at 300-01, 730 P.2d 54, an attorney filed suit against the King County Superior Court clerk, the King County Department of Judicial Administration, and King County, challenging two new policies: (1) a procedure requiring one-day advance notice that replaced on-demand access to court case files and (2) increased charges for copying court documents. The attorney alleged that the new policies violated the public disclosure act, chapter 42.17 RCW [now referred to as the PRA and recodified at chapter 42.56 RCW]. The trial court sided with the attorney, concluding that the public disclosure act governed the dispute and that both policies violated the statute. This court affirmed the trial court's decisions, but under different reasoning. Specifically, we held that while the public disclosure act did not govern because the judiciary was not a "public agency" within the meaning of the statute, the two policies did violate the common law, which provides for open access to court documents. Id. at 307-08, 730 P.2d 54.
[9] RCW 42.56.290 exempts from disclosure "records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts." See, e.g., Soter, 162 Wash.2d 716, 174 P.3d 60 (discussing this exemption which incorporates the work product rule and the attorney-client privilege, and this court finding the disputed records exempt from disclosure); Hangartner v. City of Seattle, 151 Wash.2d 439, 90 P.3d 26 (2004) (finding in part that certain documents were exempt under this provision due to the attorney-client privilege).
[10] If Judge Lust had made a decision on the Herald-Republic's motion to unseal court records, either party could separately appeal that decision. And, such an appeal would still not change the conviction decision on appeal. See, e.g., Alpine Indus., Inc. v. Gohl, 101 Wash.2d 252, 256-57, 676 P.2d 488 (1984) (holding that RAP 7.2(e) did not require leave from the appellate court in order for the trial court to consider a motion for a new trial based on new evidence, permission was not needed even if the trial court was inclined to grant it because "the trial court's action would not affect a pending appeal," and "the trial court's decision [regarding the motion for a new trial] is subject to review as any other trial court decision.").
[11] We recognize that federal cases do not make a distinction between motions made pretrial and posttrial, but we decide today only that limited intervention is a proper procedure when moving to unseal court files after the criminal trial is completed or the defendant has pleaded guilty.
[12] As discussed above, hearings for defense funding are generally ex parte and do not involve the public or the prosecutor, in order to protect the defendant's constitutional rights, including the right to a fair trial. See, e.g., United States v. Abreu, 202 F.3d 386, 391-92 (1st Cir.2000); Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir. 1970) ("[t]he manifest purpose of requiring that [the applications for defense funding] be ex parte is to insure that the defendant will not have to make a premature disclosure of his case" and to ensure "fair treatment of indigents"). Accordingly, GR 15 exempts such hearings from the requirement of notice to the prosecution (and, necessarily, the public). GR (15)(c)(2).
[13] While it is common to seal documents in this context, given that a criminal defendant has numerous constitutional rights at stake, the court must still provide written findings.
[14] RCW 42.56.904 provides:

It is the intent of the legislature to clarify that no reasonable construction of chapter 42.56 RCW has ever allowed attorney invoices to be withheld in their entirety by any public entity for documents under that chapter. It is further the intent of the legislature that specific descriptions of work performed be redacted only if they would reveal an attorney's mental impressions, actual legal advice, theories, or opinions, or are otherwise exempt under chapter 391, Laws of 2007 or other laws, with the burden upon the public entity to justify each redaction and narrowly construe any exception to full disclosure. The legislature intends to clarify that the public's interest in open, accountable government includes an accounting of any expenditure of public resources, including through liability insurance, upon private legal counsel or private consultants.
[15] See supra note 9.
[16] RCW 42.56.904 directs that attorney invoices may not be "withheld in their entirety" and that "specific descriptions of work performed be redacted only if they would reveal an attorney's mental impressions, actual legal advice, theories, or opinions, or are otherwise exempt under chapter 391, Laws of 2007 or other laws, with the burden upon the public entity to justify each redaction and narrowly construe any exception to full disclosure."