**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
7/29/2021
BY ERIN L. LENNON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| BRIAN GREEN, | No. 98768-8 |
| Respondent. | |
| v. | ORDER |
| PIERCE COUNTY, | AMENDING |
| Petitioner. | OPINION |

It is hereby ordered that the majority opinion of Montoya-Lewis, J., filed May 27, 2021, in the above entitled case is amended as indicated below. All references are to the slip opinion.

On page 1, line 2, after "the actions of" delete "state".

On page 1, line 3, after "It requires" delete "state".

On page 8, line 8, after "Under the PRA," delete "state".

On page 8, line 10, after "and the" delete "state".

On page 9, in the fourth line from the bottom of the page, after "because the" delete "state".

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Green v. Pierce County*, No. 98768-8 (order amending opinion)

On page 10, line 1, after "Generally, the" delete "state".

DATED this __29th__ day of July, 2021.

_____
Chief Justice

APPROVED:

_____
Johnson, J.

_____          _____
Madsen, J.                                                      Yu, J.

_____          _____
Owens, J.                                                      Montoya-Lewis, J.

_____          _____
Stephens, J.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 27, 2021

_González, C.J.___
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRIAN GREEN, | ) | No. 98768-8 |
| | ) | |
| Respondent, | ) | |
| v. | ) | EN BANC |
| | ) | |
| PIERCE COUNTY, | ) | |
| | ) | Filed: May 27, 2021 |
| Petitioner. | ) | |
| _____ | ) | |

MONTOYA-LEWIS, J.—The Public Records Act[1] (PRA) was created to inform the people of Washington of the actions of state agencies and to ensure access to the records of the same. RCW 42.56.030. It requires state agencies to produce records at the public's request. Certain records relating to public employment—including photographs and the month and year of birth of people who work in state criminal justice agencies—are exempt from public request. RCW 42.56.250(8). However, members of the "news media" are entitled to these exempt records. *Id*; RCW 5.68.010(5). In this case, this court must determine whether an individual or

---

[1] Ch. 42.56 RCW.

*Green v. Pierce County*
No. 98768-8

his YouTube channel qualifies as "news media." We conclude that the statutory definition of "news media" requires an entity with a legal identity separate from the individual. Here, Brian Green has not proved that he or the Libertys Champion[2] YouTube channel meets the statutory definition of "news media," and, thus, he is not entitled to the exempt records. Therefore, we reverse the trial court in part. We affirm the trial court's denial of Pierce County's motion to compel discovery.

## I. FACTS AND PROCEDURAL HISTORY

A.      Factual Background

1.      The County-City Building Incident

On November 26, 2014, Green and Peter Auvil went to the County-City Building in Tacoma to file a document and pay a parking ticket. As they went through security, the guard asked to search Auvil's bag. Auvil refused. A Pierce County deputy sheriff came to assist, and Auvil began to record a video of the interaction on his phone. The deputy told Green and Auvil that if they refused to allow the security guard to search the bag, they could either enter the building without the bag or just leave with the bag. Green and Auvil refused to leave, pointing out that the building is a public space and that they had legitimate reasons to be there. Auvil continued to refuse to allow the security guard to search the bag, arguing that the security checkpoint was a violation of his privacy rights. The conversation

---

[2] The YouTube channel is entitled "Libertys Champion," without an apostrophe.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

escalated, and the deputy asked the men to leave. When Green stood too close to him, the deputy shoved Green and caused him to fall backward onto the floor. The deputy arrested Green for criminal obstruction and took him to jail. He was released approximately 24 hours later. The prosecuting attorney's office dismissed the charge.

### 2. The PRA Request

On December 14, 2017, Green e-mailed a PRA request to the Pierce County Sheriff's public records office. He requested "[a]ny and all records of official photos and/or birth date and/or rank and/or position and/or badge number and/or date hired and/or ID Badge for all detention center and/or jail personnel and/or deputies on duty November 26 & 27 2014." Clerk's Papers (CP) at 15. He requested the office "construe [the] request in the broadest possible terms under the Public Records Act." *Id*. His e-mail also stated that "[n]one of the following request(s) for documents will be used for commercial purposes." *Id*. He sent the e-mail using the e-mail address for his musical band, the "Brian Green Band," and he signed the e-mail with the title, "Investigative Journalist." *Id*.

Susan Stewart, an office assistant in the "Public Disclosure Unit" for the Pierce County Sheriff's Department, timely responded to Green's PRA request. She provided him with 11 pages of records, but she did not include the photographs or dates of birth he requested. In her e-mail response, she explained that this

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

information was exempt pursuant to RCW 42.56.250(8).[3] They exchanged a series

of e-mails in which Green asked Stewart to release the photographs and dates of

birth because he believed he was entitled to those records. Green said he was

"working on a story concerning the Pierce County Jail" and again signed his e-mail

with the title, "Investigative Journalist." *Id.* at 20. Stewart cited to the statutory

definition of "news media" under RCW 5.68.010(5) and asked Green to provide

further information about who he was working for. Green explained he met the

definition of "news media" because he was

> a journalist that primarily covers local court cases on my Youtube [sic]
> channel. My channel is called "Liberty's Champion" [sic] . . . . I appear
> in many of the videos giving commentary on events. My channel has
> nearly 6,000 subscribers. My Youtube [sic] channel meets the
> definition of RCW 5.68.010(5) because it is a news agency that is in the
> regular business of gathering and disseminating news via the internet.

*Id.* at 27. He also provided Stewart with a link to the Libertys Champion YouTube

channel.[4] Stewart reviewed the link and conducted a Google search regarding

Green's assertion that he was a journalist. She discovered the website for Green's

musical band and noted that the band's name matched the e-mail address that Green

used for his PRA request. Stewart also sought legal advice regarding Green's PRA

---

[3] RCW 42.56.250 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language at issue in this case, we refer to the current version of the statute.

[4] The video from the County-City Building incident was posted on the Libertys Champion YouTube channel.

*Green v. Pierce County*
No. 98768-8

request before concluding that Green and the Libertys Champion YouTube channel did not meet the statutory definition of "news media." She again denied his PRA request for the officers' and jail staff's photos and dates of birth.

B.      Procedural History

Green filed a complaint against Pierce County, seeking disclosure under the PRA. He alleged that he and the Libertys Champion YouTube channel met the statutory definition of "news media" and that Pierce County violated the PRA when it withheld the photographs and dates of birth he requested. Green alleged that the statutory definition of a "news media" should be interpreted broadly to include him and his YouTube channel because he gathers and reports news on the Libertys Champion YouTube page, which purportedly exposes government corruption in Washington State. Further, he alleged that he, individually, was also news media because he researches, creates, and posts videos on the Libertys Champion's YouTube page.

Pierce County responded, stating that its decision to withhold the records was proper under the PRA. It alleged that Green and the Libertys Champion YouTube channel were not "news media" because the statutory definition requires Libertys Champion to be a legal entity separate from Green. Otherwise, it cautioned, every person with a social media account would be considered news media. It posited that

5

to be "news media," Libertys Champion must have corporate structure, generate revenue, have employees, and pay compensation.

To that end, Pierce County served Green with interrogatories and a request for production, seeking information about Libertys Champion's organizational structure and Green's legal relationship with it. When Green did not respond, Pierce County filed a motion to compel discovery. Before ruling on Pierce County's motion to compel or Green's complaint, the trial court first considered the issue of whether Green or the Libertys Champion YouTube channel met the statutory definition of "news media."

The trial court held a hearing and found the Libertys Champion YouTube channel and Green are "news media." It concluded that the statutory definition of "news media" does not require a specific corporate form or financial profit. It also noted that the Libertys Champion YouTube channel has been in existence for several years and publishes videos approximately every week with the purpose of gathering and disseminating news. Therefore, it found that the YouTube channel meets the statutory definition of "news media." Even though the trial court thought that it was not necessary to determine Green's role because "Mr. Green ***is*** Liberty's Champion," it found in the alternative that Green also meets the statutory definition because he was acting as Libertys Champion's agent. *Id.* at 443. The court also

6

*Green v. Pierce County*
No. 98768-8

concluded that additional discovery was not necessary to resolve the issue and denied Pierce County's motion to compel.

The trial court then stayed proceedings and certified the issue for immediate appeal under RAP 2.3(b)(4), which this court accepted. Order Certifying Appeal for Transfer, *Green v. Pierce County*, No. 53289-1-II, at 1 (Wash. Ct. App. July 10, 2020); Ruling Accepting Certification, *Green v. Pierce County*, No. 98768-8, at 1 (Wash. July 14, 2020). Four amici curiae briefs were filed by the following interested organizations: the First Amendment Clinic at Duke Law School; the Pierce County Corrections Guild; the Washington State Association of Broadcasters, the Radio Television Digital News Association, and Washington Newspaper Publishers Association; and Allied Daily Newspapers of Washington.

We conclude Green and the Libertys Champion YouTube channel do not meet the statutory definition of "news media," and we reverse the trial court in part. We affirm the trial court's denial of Pierce County's motion to compel discovery.

## II. ANALYSIS

This court reviews questions of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, "[t]he court's fundamental objective is to ascertain and carry out the Legislature's intent." *Id.* "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

intent." *Id.* at 9-10. The plain meaning is derived from the statute and related statutes. *Id.* at 11. If the statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and the court turns to legislative history. *Id.* at 12.

This court also reviews challenges to agency actions under the PRA de novo. RCW 42.56.550(3); *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011). The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). Under the PRA, state agencies are required to make public records available for inspection and copying, unless the record is specifically exempt. RCW 42.56.070(1). The PRA exemptions are narrowly construed, and the state agency bears the burden to prove that its refusal to disclose the records is in accordance with the law. RCW 42.56.030, .550(1).

Certain records related to public employment and licenses are exempt from the PRA. RCW 42.56.250. "Photographs and month and year of birth in the personnel files of . . . employees and workers of criminal justice agencies" are specifically exempt from disclosure. RCW 42.56.250(8). However, the legislature carved out an exception for the news media to have access to this otherwise exempted information. *Id*. The PRA applies the definition of "news media" from the news media shield law, which protects the news media from being compelled to

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

disclose their sources. *Id.* The news media shield law defines "news media" according to three categories:

> (a) Any newspaper, magazine or other periodical, book publisher, news agency, wire service, radio or television station or network, cable or satellite station or network, or audio or audiovisual production company, or any entity that is in the regular business of news gathering and disseminating news or information to the public by any means, including, but not limited to, print, broadcast, photographic, mechanical, internet, or electronic distribution;
>
> (b) Any person who is or has been an employee, agent, or independent contractor of any entity listed in (a) of this subsection, who is or has been engaged in bona fide news gathering for such entity, and who obtained or prepared the news or information that is sought while serving in that capacity; or
>
> (c) Any parent, subsidiary, or affiliate of the entities listed in (a) or (b) of this subsection to the extent that the subpoena or other compulsory process seeks news or information described in subsection (1) of this section.

RCW 5.68.010(5).

A.    Burden of Proof

As a threshold matter, the parties disagree as to who bears the burden to prove whether Green or his YouTube channel meet the definition of "news media." Green argues that the burden belongs to Pierce County because the state agency is required to prove a PRA exemption. Pierce County argues that the burden falls on Green because, under the news media shield law, the person asserting news media status bears the burden to prove they meet the statutory definition.

9

Generally, the state agency has the burden to prove a record is exempt from the PRA. RCW 42.56.550(1). The agency must identify the specific type of record and the applicable exemption. RCW 42.56.210(3), .520(4). However, this case is not merely concerned with a PRA exemption; rather, it involves a question of whether *an exception to the exemption* applies. Once the agency identifies the record and exemption, the burden shifts to the person seeking an exception to that exemption. RCW 42.56.210(2); *see Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 567-68, 618 P.2d 76 (1980) (holding that the patient has the burden to prove an exception to the medical records exemption). The PRA exempts a category of records from public request. RCW 42.56.250(8). Then, the PRA provides that the news media exception carves out a category of requesters to whom the agency must disclose those records. *Id.* When the question is whether the requester can claim news media status and qualify for an exception, the requester is in the better position to prove they are news media.

In its response to Green's PRA request, Pierce County properly identified the type of records and the applicable exemption. Therefore, Pierce County has satisfied its burden, and the burden shifts to Green, as the party asserting the news media exception to the PRA exemption. Green is in the best position to prove whether he or the Libertys Champion YouTube channel meets the definition of "news media"

and qualifies for an exception to the PRA exemption. Therefore, Green has the burden of proof.

B.      Statutory Definition of "News Media"

Under RCW 5.68.010(5), there are three definitions of "news media." Only (a) and (b) are at issue in this case, and we address each in turn.

1.      *RCW 5.68.010(5)(a)*

First, we consider whether the Libertys Champion YouTube channel meets the statutory definition of "news media." RCW 5.68.010(5)(a) defines "news media" as

> [a]ny newspaper, magazine or other periodical, book publisher, news agency, wire service, radio or television station or network, cable or satellite station or network, or audio or audiovisual production company, or any entity that is in the regular business of news gathering and disseminating news or information to the public by any means, including, but not limited to, print, broadcast, photographic, mechanical, internet, or electronic distribution.

The statute requires a two-part analysis. First, the purported member of the news media must fall under one of the listed traditional news outlets or the general term, "entity." Second, it must be engaged "in the regular business of news gathering and disseminating news or information to the public." RCW 5.68.010(5)(a). Libertys Champion fails the first part of the test. Therefore, it does not meet the statutory definition of "news media."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

YouTube is an online video sharing platform that allows people to watch and stream videos. Users generate and upload content by posting videos to their YouTube channels. Those channels may be owned and operated by individuals, companies, or other organizations. Green runs the Libertys Champion YouTube channel, and he does not dispute the trial court's finding that they are one and the same.

The Libertys Champion YouTube channel does not fit into any of the categories of traditional news outlets listed in the statute, nor is it an "entity." The parties focus their arguments on the meaning of the word "entity" in the statute. This court does not examine a specific word in a vacuum; rather, we must consider the context of the surrounding text to determine the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 11-12. The legislature used the general word "entity" following a list of traditional news outlets. Under the canon of construction ejusdem generis, the meaning of a general word is construed consistent with the specific terms in the statute. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 970, 977 P.2d 554 (1999) ("'[S]pecific terms modify or restrict the application of general terms where both are used in sequence.'" (alteration in original) (quoting *Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244 (1972))). Also, the doctrine of noscitur a sociis directs that a word is not read in isolation; rather, the word's meaning is determined by its relationship to other words in the statute. *State v. Roggenkamp*, 153 Wn.2d 614, 623,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

106 P.3d 196 (2005) ("'[T]he meaning of words may be indicated or controlled by those with which they are associated.'" (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999))).

Under the doctrines of ejusdem generis and noscitur a sociis, the word "entity" must be interpreted to embrace something that is similar in nature to the specific types of traditional news outlets listed in the statute. The list includes only organizations. It does not include individuals. Indeed, the statute differentiates between organizations and the individuals who represent them. *Compare* RCW 5.68.010(5)(a) ("[a]ny newspaper, magazine or other periodical . . . or any entity"), *with* .010(5)(b) ("[a]ny person who is or has been an employee, agent, or independent contractor of any entity listed in (a)"). Under the plain meaning of the statute, the word "entity" cannot be construed to include an individual. An "entity" must be something with a legal identity separate from the individual.

Modern conceptions of "news media" continue to evolve and expand beyond the limits of the statutory definition, but that definition circumscribes our analysis. The legislature enacted the current statutory definition of "news media" in 2007, and the statute has never been amended. H.B. 1366, 60th Leg., Reg. Sess. (Wash. 2007). In 2007, it was unlikely the legislature could foresee how social media would advance to become an instrumental part of our daily lives. As social media developed, so has a "new news cycle." Ellyn M. Angelotti, *Twibel Law: What*

13

*Defamation and Its Remedies Look Like in the Age of Twitter*, 13 J. HIGH TECH. L. 430, 457 (2013). "With the advent of the Internet and the decline of print and broadcast media . . . the line between the media and others who wish to comment on political and social issues becomes far more blurred." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 352, 130 S. Ct. 876, 75 L. Ed. 2d 753 (2010). Indeed, many people now access news through their social media accounts. During the Black Lives Matter protests over the last year, protesters, bystanders, and journalists alike posted copious social media posts and livestreams to keep people informed of the events. *See* James Yeh, '*I'm Out Here—I Am the News for Our People.' How Protestors Across the Country Are Keeping Informed*, COLUMBIA JOURNALISM REV. (Aug. 5, 2020), cjr.org/united_states_project/protest-activist-news-social-media.php [https://perma.cc/2TUL-7FMX]. The evermore constant use of social media to access news demonstrates our increased reliance on and trust in social media, and it requires careful vetting to ensure that the news and stories we find are accurate. The manner in which we access news today is vastly different from how we did it in 2007, and this statutory definition may not comport with the current intersection of social media and the news. However, the legislature, not the court, is responsible for enacting statutes, and this court is bound by the statute's unambiguous language.

*Green v. Pierce County*
No. 98768-8

As Green points out, local news media entities such as the *Seattle Times*, KIRO 7 News, and the *Bellingham Herald* have adapted to the Internet and created their own YouTube channels.[5] However, owning and operating a YouTube channel alone does not create a news media entity. A social media account is an extension of a person or an organization's presence into the virtual world and allows users to connect to the rest of the Internet. Emily M. Janoski-Haehlen, *The Courts Are All a 'Twitter': The Implications of Social Media Use in the Courts*, 46 VAL. U. L. REV. 43, 43 (2011). Unlike Libertys Champion, the other YouTube channels Green points to are owned and operated by valid legal entities.[6] A YouTube channel run by an individual does not meet the statutory definition of "news media."

Libertys Champion does not fit into any of the specific categories of traditional news outlets, nor does it fit into the general category of "entity." Libertys Champion is a YouTube channel that does not have a legal identity separate from Green. The trial court found, "Mr. Green *is* Liberty's Champion," and Green does

_____

[5] Green and the First Amendment Clinic at Duke Law School, as amicus curiae, also argue that the definition of "news media" must be construed broadly so as to not infringe on the First Amendment's freedom of the press. However, there are no freedom of the press implications if there is no news media. Further, there is no First Amendment right to public information. "The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally." *Houchins v. KQED, Inc.*, 438 U.S. 1, 16, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978) (Stewart, J., concurring).

[6] The Washington State Association of Broadcasters, the Radio Television Digital News Association, and Washington Newspaper Publishers Association amici argue that a YouTube channel cannot be a news media entity. However, under the statute, we are more concerned with to whom the channel belongs and less concerned with the medium. RCW 5.68.010(5)(a) (defining news media as an entity that gathers and disseminates news "by any means").

15

*Green v. Pierce County*
No. 98768-8

not dispute this fact. CP at 426. Indeed, Green has stated that "Libertys Champion

does not exist without Mr. Green." *Id.* at 181. The Libertys Champion YouTube

channel fails the first step of the analysis, so we do not reach the issue of whether it

is "in the regular business of news gathering and disseminating news or information

to the public."[7] RCW 5.68.010(5)(a).

    2.    *RCW 5.68.010(5)(b)*

Next, we consider whether Green, individually, meets the statutory definition

of "news media." RCW 5.68.010(5)(b) defines "news media" as

> [a]ny person who is or has been an employee, agent, or independent
> contractor of any entity listed in (a) of this subsection, who is or has
> been engaged in bona fide news gathering for such entity, and who
> obtained or prepared the news or information that is sought while
> serving in that capacity.

This definition defines "news media" as an individual and—similar to the definition

under RCW 5.68.010(5)(a)—it requires multiple steps to the analysis. First, the

person must be an employee, agent, or independent contractor of a news media entity

as defined in (a). This definition is derivative of (a), and an individual can be "news

media" only when they have one of these statutorily required connections to a valid

---

[7] Green argues that Libertys Champion is a newspaper or periodical because of its rate of publication, the size of its audience, and its purpose to research and report to the public on government corruption. These arguments go to the second step of the analysis—whether the news media entity is engaged "in the regular business of news gathering and disseminating news or information to the public"—but they have no bearing on whether Libertys Champion is a "news media entity." RCW 5.68.010(5)(a). Libertys Champion is not "news media" simply because it has a YouTube channel and regularly posts content.

16

news media entity. Then, the person must also be "engaged in bona fide news gathering" for the news media entity and must have "obtained or prepared" the information in that capacity. RCW 5.68.010(5)(b).

Once again, Green cannot satisfy the first part of this test because the Libertys Champion YouTube channel is not a news media entity under (a). If there is no news media entity, Green cannot be an employee, agent, or independent contractor of a news media entity. Therefore, we do not reach the question of Green's relationship to his YouTube channel. Green fails the first step of the analysis, so we also do not reach the issue of whether he was "engaged in bona fide news gathering" or obtained the news or information on behalf of a news media entity.[8] *Id.* Under the plain meaning of the statute, Green, individually, does not meet the statutory definition of "news media."

Nor do we reach the issue of Green's intent in seeking the exempt records. The parties and amici dispute the relevance of Green's intent in his PRA request. Pierce County and the Pierce County Corrections Guild amicus argue the court should consider his intent in its analysis. They argue that the trial court should have

---

[8] Green argues that he meets the definition under (b), pointing to the trial court's finding that he administers and manages the Libertys Champion YouTube channel. He stated that he posts videos that purportedly expose government corruption in Washington State. To produce his stories, he researches current events, contacts public officials and public offices, and makes PRA requests. This evidence goes to the later steps of the analysis: whether Green is engaged in bona fide news gathering or whether he obtained the information on behalf of a news entity. It does not have any bearing on the threshold question of whether he is an employee, agent, or independent contractor of a news media entity.

17

denied the PRA complaint on the basis that Green was not engaged in bona fide news gathering because he impermissibly sought these particular records for personal reasons—allegedly to retaliate against the officials who were involved in his arrest and detention. The Washington State Association of Broadcasters, the Radio Television Digital News Association, and Washington Newspaper Publishers Association amici and Allied Daily Newspapers of Washington amicus argue against the court considering intent. Although he does not expressly argue that the court should not consider intent, Green faults Pierce County for not inquiring about his intent in seeking the records and argues it cannot bring the argument on appeal. In the alternative, Green argues he was engaged in bona fide news gathering because his intent was to publish a news story about his arrest, claiming his imprisonment was unlawful and demonstrates government abuse. While a requester's intent may be relevant when determining whether they were engaged in bona fide news gathering or whether they obtained the information in that capacity, it has no bearing on whether a news media entity exists or what a person's relationship is to that entity. Therefore, we do not reach the issue of intent.

C.     Motion To Compel

We conclude that neither Green nor the Libertys Champion YouTube channel meets the statutory definition of "news media." We also conclude the trial court did not abuse its discretion in denying the motion to compel discovery because further

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

discovery is not necessary to resolve the issue. *See Fellows v. Moynihan*, 175 Wn.2d 641, 649, 285 P.3d 864 (2012) ("Appellate courts ordinarily review discovery rulings for abuse of discretion."); *see also Neigh. Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 717-19, 261 P.3d 119 (2011) (discovery is appropriate if the information sought is necessary to resolve a factual dispute). Therefore, we affirm the trial court's ruling denying Pierce County's motion to compel discovery.

## III. CONCLUSION

We reverse in part. In order to access otherwise exempt records under the PRA, the requester bears the burden to prove an exception to the exemption applies. Green has not proved that he or the Libertys Champion YouTube channel meets the statutory definition of "news media." Therefore, we reverse the trial court's ruling that Green and the Libertys Champion YouTube channel satisfy the exception for PRA requests made by the news media. Further, we affirm the trial court's denial of Pierce County's motion to compel discovery. We also deny Green's request for costs and fees, and we remand to the trial court with instructions to dismiss Green's complaint.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Green v. Pierce County*
No. 98768-8

_____
Montoya-Lewis, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
Yu, J.

_____

20

*Green (Brian) v. Pierce County*

No. 98768-8

WHITENER, J. (dissenting)—This case concerns a question central to our democracy: what counts as news media in the shifting landscape of the 21st century? Brian Green runs a YouTube channel called Libertys Champion, which, he claims is news media. From his perspective, Libertys Champion's status as news media grants him the benefits of RCW 42.56.250(8) and RCW 5.68.010(5) and, thus, access to certain information otherwise exempt from disclosure under the Public Records Act (PRA), ch. 42.56 RCW. Pierce County and the majority disagree.

The majority denies Green the benefit of these statutes on the ground that to satisfy the requirements of being news media under RCW 5.68.010(5), Libertys Champion—or any other *thing* seeking the benefits of these statutes—"must be something with a legal identity separate from the individual." Majority at 13. My reading of the statute convinces me otherwise. Thus, Libertys Champion—Green's YouTube channel—cannot be precluded from counting as news media simply because it lacks a separate legal identity from Green.

Libertys Champion also meets the second requirement, which the majority does not reach: it is engaged in the regular business of news gathering and

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Green (Brian) v. Pierce County*, No. 98768-8

disseminating news or information. RCW 5.68.010(5)(a). I therefore would affirm

the trial court and remand for further proceedings in line with this opinion.

ANALYSIS

This case concerns two interrelated statutes. First is a provision of the PRA,

which reads:

> Photographs and month and year of birth in the personnel files of
> employees or volunteers of a public agency, including employees and
> workers of criminal justice agencies as defined in RCW 10.97.030. The
> news media, as defined in RCW 5.68.010(5), shall have access to the
> photographs and full date of birth. For the purposes of this subsection,
> news media does not include any person or organization of persons in
> the custody of a criminal justice agency as defined in RCW 10.97.030.

RCW 42.56.250(8).

Also relevant here is the portion of RCW 5.68.010 that reads:

> (5) The term "news media" means:

> (a) Any newspaper, magazine or other periodical, book
> publisher, news agency, wire service, radio or television station or
> network, cable or satellite station or network, or audio or audiovisual
> production company, or any entity that is in the regular business of
> news gathering and disseminating news or information to the public
> by any means, including, but not limited to, print, broadcast,
> photographic, mechanical, internet, or electronic distribution.

I agree with the majority that determining whether something qualifies as

"news media" under RCW 5.68.010(5)(a) is a two-step process in which courts first

determine whether the "purported member of the news media" is one of the listed

outlets or an "'entity,'" and, second, determine whether the entity engages "'in the

2

*Green (Brian) v. Pierce County*, No. 98768-8

regular business of news gathering and disseminating news or information to the public.'" Majority at 11 (quoting RCW 5.68.010(5)(a)).

I part ways with the majority, however, on its holding that to qualify as an "entity," Libertys Champion—or anything else—must be an organization "with a legal identity separate from the individual." *Id.* at 13.

The core of statutory interpretation is plain language analysis. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Nothing in the plain language of RCW 5.68.010(5)(a) commands that to qualify as an "entity," the thing in question must have a separate legal identity from an individual or must be an organization. This becomes clear when looking at the other terms in the statute, such as "newspaper." While major newspapers like the *Seattle Times* and the *New York Times* are of course organizations with separate legal entities, nothing in our statutory language requires it. Nor does the dictionary definition indicate that an organization is required. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1524 (3d ed. 2002) (defining "newspaper" as "a paper that is printed and distributed daily, weekly, or at some other regular and usu[ally] short interval and that contains news, articles of opinion (as editorials), features, advertising, or other matter regarded as of current interest"). (While *Webster's* also defines "newspaper" as an "organization engaged in composing and issuing a newspaper," this does not suggest that the newspaper itself must have—or be run by—an organization to be considered

3

*Green (Brian) v. Pierce County*, No. 98768-8

a newspaper. *Id.*) The term "newspaper" thus encompasses not only the *New York Times* but also high school newspapers, community newspapers, and the like. Nothing *excludes* from the term "newspaper" a single person putting together, editing, printing, and distributing a few pages of news or information—the analog equivalent of the digital task performed by Green via Libertys Champion. So, too, with the term "magazine"—while *The New Yorker* and *Scientific American* are separate legal entities, zines, for instance, commonly are created by one person, just like Libertys Champion.

The list of terms provided by RCW 5.68.010(5)(a) shows that "entity" is not limited to things that have a separate legal identity. *Webster's* agrees. It states that "entity" is synonymous with "being" and "existence." WEBSTER'S, *supra*, at 758. Although *Webster's* also notes that such an existence is especially an "independent, separate, or self-contained existence," even *that* definition is not the same as the separate legal identity required by the majority. *Id.* The trial court's conclusion that "Green ***is*** Liberty's Champion," Clerk's Papers (CP) at 426, does not mean that Libertys Champion lacks a self-contained existence. While *Black's Law Dictionary* offers a definition similar to the majority's definition, the definition in *Webster's* better captures the intent of the legislature evinced by the other terms in the statute. BLACK'S LAW DICTIONARY 673 (11th ed. 2019) (defining "entity" as "[a]n organization (such as a business or a governmental unit) that has a legal identity

4

*Green (Brian) v. Pierce County*, No. 98768-8

apart from its members or owners"). Thus, under the very canons of statutory construction invoked by the majority, I would hold that Libertys Champion qualifies as an "entity" under RCW 5.68.010(5)(a). *See State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (discussing noscitur a sociis as a canon that "provides that a single word in a statute should not be read in isolation, and that 'the meaning of words may be indicated or controlled by those with which they are associated.'") (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)); *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 970, 977 P.2d 554 (1999) (defining ejusdem generis as a canon that commands that "'[s]pecific terms modify or restrict the application of general terms where both are used in sequence'" (quoting *Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244 (1972))).

The concerns animating the First Amendment's protection of the free press also favor including Libertys Champion in the definition of "entity" in this statute. The United States Supreme Court has remarked that "[f]reedom of the press is a 'fundamental personal right' which 'is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. . . . The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.'" *Branzburg v. Hayes*, 408 U.S. 665, 704, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) (alteration in original) (quoting *Lovell v. City of Griffin*, 303

5

U.S. 444, 450, 452, 58 S. Ct. 666, 82 L. Ed. 949 (1938)). *See also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) ("Speech restrictions based on the identity of the speaker are all too often simply a means to control content."); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 306, 94 S. Ct. 2714, 41 L. Ed. 2d 770 (1974) (Douglas, J., concurring) ("The First Amendment . . . draws no distinction between press privately owned, and press owned otherwise."). Indeed, the Court has made clear that "liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods." *Branzburg*, 408 U.S. at 704. While this case does not directly concern the First Amendment, *Branzburg* remains instructive, as its "lonely pamphleteer" has become today's solitary YouTuber, much as its "large metropolitan publisher" has become today's 24-hour news network. From the perspective of the First Amendment, distinguishing different news media based on size or organizational structure or status as a legal entity is disfavored, if not outright impermissible. To hold that RCW 5.68.010(5)(a) provides otherwise, as the majority does, risks construing the statute in an unconstitutional manner, a result we must avoid. *See Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015) ("We construe statutes to avoid constitutional doubt.").

*Green (Brian) v. Pierce County*, No. 98768-8

Having concluded that Libertys Champion qualifies as an "entity," I would reach the second question: whether Libertys Champion engages "in the regular business of news gathering and disseminating news or information to the public by any means." RCW 5.68.010(5)(a). I would answer this question, as well, in the affirmative.

The statute does not provide a definition of any of these terms. I focus on the most essential: "news." In *Webster's*, "news" is defined as "a report of a recent event," "new information," and "fresh tidings." WEBSTER'S, *supra*, at 1524. This tracks with a definition suggested over a century ago by the United States Supreme Court, which indicated that "news" means "information respecting current events" and "the history of the day." *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 234, 39 S. Ct. 68, 63 L. Ed. 211 (1918). Similar, too, is the definition employed by the D.C. Circuit Court of Appeals in *Cause of Action v. Fed. Trade Comm'n*, 419 U.S. App. D.C. 74, 799 F.3d 1108 (2015). There, the court restated a definition of news media currently in a statute pertaining to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests, but taken, originally, from a prior D.C. Circuit case: to be considered a member of the news media, the FOIA "requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to an audience." *Cause of Action*, 799 F.3d at 1120.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Libertys Champion easily meets these definitions of "news" based on the record. In answers to the State's interrogatories, Green described videos on Libertys Champion such as "Singled Out: Student barred from school for freedom of expression, Educators bully family, public," which concerned a situation in which "a kid wore [a] rebel hat to school . . . and the school officials made a big deal about it." CP at 103. Another described was entitled "A License to Kill: Badges Do Grant Extra Rights," which involved a discussion regarding "justifiable homicide or use of deadly force by public officer[s]" and included footage of a "scheduled meeting of the Washington Association of Prosecuting Attorneys." *Id.* Still another was titled "Pierce County Deputy Assaults Disabled Black Man, Snatches His Cane, and Arrests Him for Obstruction," which dealt with a situation where "a disabled [B]lack man was waiting outside a courtroom in the Pierce County-City Building when the man made some remarks about the prosecutors," and then, after being told to leave and indicating he did not intend to leave, had his cane "snatched" by deputy sheriffs and then was "pushed . . . down onto a bench." *Id.* at 104.

Such items are similar to a recent article in the online edition of the *Seattle Times*, which dealt with reported dangerous behavior of a Pierce County sheriff. *See* Jim Brunner & Lewis Kamb, *Black Newspaper Delivery Driver Detained After Pierce County Sheriff Claims, Then Recants, Threat to Life*, SEATTLE TIMES (Mar. 18, 2021, 9:07 PM, updated Mar. 22, 2021, 8:16 PM),

*Green (Brian) v. Pierce County*, No. 98768-8

https://www.seattletimes.com/seattle-news/crime/black-newspaper-delivery-driver-detained-after-pierce-county-sheriff-claims-then-recants-threat-to-life/ [https://perma.cc/9LKL-AWBA]. As this comparison makes clear, Libertys Champion is news. Finding the material disseminated not newsworthy does not make it any less news.

Libertys Champion is also engaged in the regular business of news gathering and disseminating news or information to the public by any means. RCW 5.68.010(5)(a). The record shows that posting videos was the regular practice of Libertys Champion. CP at 104. The videos—containing news and information, as the record shows, were also disseminated on the Internet via his YouTube channel. *Id.*[1]

Pierce County disagrees. It insists that Libertys Champion cannot be news media under RCW 5.68.010(5) because Libertys Champion is not in the commercial business of news gathering. But nothing in the plain language of RCW 5.68.010(5)(a) requires *commercial* business or any other similar terms Pierce County attempts to read into the statute. Reading the term "business" in light of the

---

[1] It also follows that Green, therefore, is acting as an agent of news media per RCW 5.68.010(5)(b). (While Pierce County argues that Green's reason for seeking the information disqualifies him from being engaged in bona fide news gathering, all Pierce County has produced are speculative accusations that Green is retaliating. The reasons why Green wants the information is not the focus of the inquiry that must be made when deciding has he met the requirements of RCW 5.68.010(5) or RCW 46.56.250(8).)

9

rest of the statute, it becomes clear such a requirement does not exist, for newspapers and magazines are both certainly included within the reach of RCW 5.68.010(5)(a) that are *not* commercial businesses. Furthermore, if we are to agree with Pierce County's restrictive reading of the statute, all that Green would be required to do is to register his sole entity into a limited liability company with one owner and a commercial business would then exist.

Most troublingly, throughout Pierce County's briefing can be found a certain disapprobation, as if Libertys Champion is simply *unworthy* of being considered news media or that what it seeks here is not newsworthy. For instance, Pierce County indicates the exemption to the PRA does not apply because of the material Green was denied and his apparent intent to distribute it.[2] It must be noted first that blocking this request based on the nature of the information sought, or whether it is to be distributed, is unsupported by RCW 42.56.250(8), which requires that the requester be "news media" under RCW 5.68.010(5)—nothing more. *See Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) ("[A] court must not add words where the legislature has chosen not to include them.").

More to the point, by arguing that Libertys Champion cannot have access to this information, Pierce County essentially argues that this court should determine

---

[2] This material was "[a]ny and all records of official photos and/or birth date and/or rank and/or position and/or badge number and/or date hired and/or ID Badge for all detention center and/or jail personnel and/or deputies on duty November 26 & 27 2014." CP at 15.

10

what is newsworthy and what is not. But, it is not for courts in our country to decide what news is worthy. The free press protections in the First Amendment warn strongly against doing so. *See Branzburg*, 408 U.S. at 703-04 (discussing the First Amendment's unvarying protection of a variety of news gatherers, irrespective of their size or what information they convey). The First Amendment's free speech clause also prohibits, absent compelling state interest and narrowly tailored means, discrimination based on content of speech. *Reed v. Town of Gilbert*, 576 U.S. 155, 163, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). Any interpretation of RCW 5.68.010(5) that distinguishes between news gathering entities based on the content of their news or information must be avoided. *See Utter*, 182 Wn.2d at 434.

Therefore, I would affirm the trial court's ruling that Green and Libertys Champion YouTube channel satisfy the exception for PRA requests made by the news media. This would not enable everyone to access the information Green seeks, as the protections of RCW 42.56.250(8) apply when news media are not involved. Those whose personal information is sought receive notice, per RCW 42.56.250(12), and, in certain situations, have the opportunity to seek an injunction against the release of the information sought (though whether such an injunction could be granted in this instance is not at issue here). RCW 42.56.540; *see Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 796, 418 P.3d 102 (2018) (providing the injunction standard). Perhaps most importantly, however, this interpretation follows the intent

11

of the legislature. If the legislature wanted to prevent the release of this information, it is well within their power to draft a bill that would do so. But the law as it stands requires the release of this information due to Libertys Champion's status as news media.

## CONCLUSION

I would hold that Libertys Champion is "news media" under RCW 5.68.010(5)(a) and, therefore, satisfies the requirements of RCW 42.56.250(8), entitling Green to the documents and information he requested. I would therefore affirm the trial court's decision and remand for further proceedings in line with this opinion.

*Green (Brian) v. Pierce County*, No. 98768-8

I respectfully dissent.

Whitener J.

Gordon McCloud, J.

13